547 A.2d 362

Jessie B. FITZPATRICK, Appellee,

v.

Barclay W. FITZPATRICK, Appellant.

Barclay W. FITZPATRICK, Appellant,

v.

Jessie B. FITZPATRICK, Appellee.

Superior Court of Pennsylvania.

Argued March 8, 1988.

Filed July 19, 1988.

Reargument Denied Sept. 9, 1988.

Jean B. Green, Norristown, for appellant.

Lyn B. Schoenfeld, Media, for appellee.

Before ROWLEY, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

This is a consolidated appeal from a decree of equitable distribution in a complex, and seemingly endless, bifurcated divorce action. The groundwork for the current procedural morass was laid innocuously enough in 1978 when, after four years of marriage, appellee filed a petition for spousal support.

The trial court denied the application on the grounds that appellee had committed adultery which appellant had neither connived at nor condoned, and that appellee had departed the marital residence without adequate reason at law, all of which served to vitiate any claim of entitlement to financial contribution from appellant. No appeal was taken from this order. In March 1979 appellant filed for divorce on grounds of adultery. In April of the same year appellee filed applications for alimony *pendente lite,* counsel fees and costs, and a discovery petition in the divorce suit, and, in addition, commenced an equity action. The discovery request was denied in October, 1979, and the request for alimony pendente lite, and attendant costs was denied in March of 1980. An appeal followed to this court

which dismissed in July 1980 on the basis that the Order appealed from was interlocutory. One week after the dismissal, appellee filed first a petition to proceed under the Divorce Code of 1980, 23 Pa.S.A. § 101, *et seq.*, and a month thereafter a complaint in divorce pursuant to the Code. In 1981 all outstanding matters were consolidated, and, in May of 1982, the equity action was tried, resulting in an adjudication from which both parties appealed to this court.[1] In December of 1983 the divorce action was bifurcated and a decree in divorce entered. Economic issues were heard by the master, whose findings were reviewed in the trial court, and the Order issued from which the instant appeals are taken.

Appellant has presented us with eight claims which we will address seriatim.[2]

█ Appellant argues that the trial court acted improperly in proceeding under the Divorce Code of 1980, 23 Pa.S.A. § 101 *et seq.* To understand the import of this claim a brief examination of its particular procedural context is necessary. Appellant filed for divorce under the 1929 Divorce Law, 23 Pa.S.A. § 1 *et seq.* (repealed April 2, 1980). In July of 1980, after the effective date of the new Code, appellee unsuccessfully petitioned the court for permission to proceed thereunder. The trial court took no action on a timely request for reconsideration in letter form. Three months

---

1. By means of the equity action, appellee sought the imposition of a constructive trust on realty titled solely in appellant's name, or in the alternative, compensation for the reasonable value of services performed in renovating the marital residence. Appellee also claimed that a certain automobile had been presented to her as a gift by appellant. In a Memorandum filed January 16, 1985, *Fitzpatrick v. Fitzpatrick,* 340 Pa.Super. 625, 490 A.2d 15 (1985), a panel of this court affirmed the chancellor's finding that neither constructive trust or nor a monetary award was justified. We reversed as to the issue of the automobile, concluding that no valid gift had been made.

2. Appellant concedes that his final two claims have been addressed by the decisions handed down in *Bachetta v. Bachetta,* 498 Pa. 227, 445 A.2d 1194 (1982) (Divorce Code applies retroactively to property acquired prior to effective date of Code), and *Anthony v. Anthony,* 355 Pa.Super. 589, 514 A.2d 91 (1986) (increased value of property acquired prior to marriage is marital property). We therefore see no reason to examine appellant's arguments on these matters.

later the case was reassigned to another judge, who upon receiving a communication from appellee's counsel to the effect that the reconsideration matter remained open, invited the submission of a formal reconsideration petition. The petition was granted, and the matter proceeded to hearing before the master who granted appellant's request for bifurcation.

Appellant bases his objections to proceeding under the 1980 Divorce Code on several grounds. However, he principally relies on the argument that because the petition for reconsideration was not granted within thirty days, the trial court thereafter lacked jurisdiction to enter the Order, leaving appellee with the sole option of taking an appeal to this court.[3] The necessary corollary is that judges of the same court may not overrule each other.

In support of his argument, appellant cites 42 Pa.C.S.A. § 5505 which states that:

Except as otherwise provided or prescribed by law, a court may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

While the principle is correct as stated, we find that it is inapplicable here. In *Simpson v. Allstate Insurance Co.*, 350 Pa.Super. 239, 504 A.2d 335 (1986), an en banc panel of this court found that a trial court's attempt to open a judgement subsequent to the thirty day appeal period, even though no appeal had been taken, was error where no fraud or extraordinary circumstance justifying its action had been shown. *See also Loomis Lake Association by Hughes v. Smith*, 366 Pa.Super. 612, 531 A.2d 1152 (1987) (judgement becomes final after thirty day appeal period although no appeal is taken).

---

**3.** We note that appellant was not placed in a similar situation as the the Order allowing the action to proceed under the 1980 Code is interlocutory and unappealable. *Toll v. Toll,* 293 Pa.Super. 549, 439 A.2d 712 (1981), *aff'd.,* 498 Pa. 536, 448 A.2d 1379 (1982).

Herein the trial court premised its action in overturning the prior order upon its obligation to fulfill the objectives of the new Code,[4] and relied for its authority to correct perceived error upon *Great American Credit Corp. v. Thomas MiniMarkets, Inc.*, 230 Pa.Super. 210, 326 A.2d 517 (1974). In that case a trial judge vacated its own order more than thirty days subsequent to entry after discovering that a crucial document had been misplaced in transmission through the court system. An *en banc* panel of this court found that equity would allow correction of the error under the facts of that case. However, a determination of the propriety of the former order in this instance was not for the trial court. First, there were no extenuating circumstances such as occurred in *Great American*.

> Although the inability of a court to grant relief from a judgment entered in a contested action after the appeal period has expired is not absolute, the discretionary power of the court over such judgements is very limited. Generally, judgements cannot be opened or vacated after they have become final unless there has been fraud or some other circumstance 'so grave or compelling as to constitute "extraordinary cause" justifying intervention by the court.'

*Simpson, supra,* 350 Pa. at 245, 504 A.2d 337 (citations omitted). A final appealable order had already been entered, *Gordon v. Gordon,* 293 Pa.Super. 491, 439 A.2d 683 (1981), *aff'd.* 498 Pa. 570, 449 A.2d 1378 (1982), and an application for reconsideration had been tacitly denied. Therefore, contrary to appellee's assertion, the matter was not unresolved at the time it was transferred. Rather the failure of the original judge to rescind its own order, or indeed to act at all, was itself a response, and as such was referable to this court for the determination of whether

4. The trial court attempts to distinguish *Leonard v. Andersen Corp.,* 300 Pa.Super. 22, 445 A.2d 1279 (1982) (trial court's jurisdiction to act on applications for reconsideration is lost after thirty days) on the basis that *Leonard* is dependent on Pa.R.C.P. 1701(a) which divests a court of jurisdiction once an appeal is taken. However, case law, *See Simpson,* and *Loomis, supra,* makes no such distinction.

error had occurred.[5] Further, it is settled law that a trial judge may not overrule an interlocutory order by another judge, *Reed v. Reed*, 354 Pa.Super. 284, 511 A.2d 874 (1986), nor clearly, under the same circumstances may a co-equal judge overrule a fellow judge's final order, however mistaken he believes it to be. Therefore appellee's failure to approach this court for examination of her claim was an error compounded by the trial court's assumption of that responsibility *sua sponte.*

■ Appellant is therefore accurate in his assertion that the trial court was without competence to proceed further with the reconsideration matter. However, despite the trial court's misjudgment we find that the Code is applicable. In 1983 appellant motioned for bifurcation of the Divorce action then in train, albeit against his wishes, under the 1980 Code. At that time appellant also filed an amended complaint which specifically included a count under 23 Pa. S.A. § 201(d), which requires an averment that the marriage is irretrievably broken, and that the parties have lived separate and apart for three years. In so doing, that is in presenting the court with a new cause of action under the Code, as authorized by Pa.R.C.P. 1033, appellant circumvented the jurisdictional defect created by the granting of appellee's reconsideration petition beyond the thirty day time period. In effect, appellant placed himself squarely within the trial court's cognizance where its power of inquiry was unquestionable. 23 Pa.S.A. § 301(a).[6] Having done so, he will not now be heard to complain.

■ Appellant's remaining claims concern specific items of property. In reviewing the trial court's method of allocation, we utilize an abuse of discretion standard, *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151 (1987), that is, we

5. The trial court argues that because its predecessor did not have the benefit of *Gordon, supra,* which is supportive of its own action in granting appellee's request for reconsideration, the decision was properly taken. However, we find this contention unpersuasive.

6. § 301 Jurisdiction
   (a) The courts of this Commonwealth ... shall have original jurisdiction in cases of divorce....

will not usurp the trial court's authority as finder of facts, nor adopt guidelines and presumptions beyond those supplied by the legislature. *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984).

It is first argued that the trial court erred in pronouncing a certain automobile, as well as its immediate predecessors, to be marital property subject to distribution. The vehicle in question, a 1978 Oldsmobile station wagon, was registered to a corporation solely owned by appellant. On appeal to this court after trial on appellee's equity action, the vehicle was found not to have been a gift to appellee because the common law elements of such a transaction were not all present. On remand the master determined, echoed by the trial court, that despite its nominal ownership, the automobile was used 99% of the time for family and personal rather than business purposes. As a result, the car was accounted marital property subject to distribution. Appellant now contends that because the title to the automobile was held by this court to be in the corporation, appellee is collaterally estopped to assert any interest in it except insofar as she may have an interest in the corporation as a whole. We disagree.

As appellant correctly advises, collateral estoppel operates to prohibit relitigation of a fact previously decided in a court of competent jurisdiction. *Lebeau v. Lebeau*, 258 Pa.Super. 519, 393 A.2d 480 (1978). While we did conclude in *Fitzpatrick v. Fitzpatrick, supra*, that the car was titled in the corporation, we declined specifically to decide whether it was, nevertheless, marital property. Since that question was not previously decided, appellee is not estopped from posing it.

■ We must also decide whether the trial court erred in concluding that the vehicle was marital property.

23 Pa.S.A. § 401(f) defines marital property as follows:

All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint

tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by showing that the property was acquired by a method listed in subsection (d).[7]

None of the methods of acquisition which permit exclusion of certain items from the rubric marital property can be tortured to mean registration in the name of a corporation owned wholly by one of the parties.

In *Anthony v. Anthony*, 355 Pa.Super. 589, 514 A.2d 91 (1986), this court in commenting upon § 401, albeit in a different context, held that "it is the time, rather than the manner, of acquisition that determines whether property is marital property." *Id.*, 355 Pa.Superior Ct. at 592, 514 A.2d 93. Moreover, the financial or other contributions of the respective parties are "not germane to the definition of marital property under the Code." *Id.* Nor is the source of the property the controlling factor. We have found that even an inheritance, normally precluded by definition from distribution, is nevertheless subject to treatment as marital property where it had been placed into a joint account. *Bold v. Bold*, 358 Pa.Super. 7, 516 A.2d 741 (1986). *See also Sutliff v. Sutliff*, 361 Pa.Super. 504, 522 A.2d 1144, *appeal granted*, 515 Pa. 615, 530 A.2d 868 (1987); *contrast Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363

7. § 401(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:
　(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.
　(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.
　(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.
　(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.
　(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.
　(6) Veterans' benefits....
　(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced.

(1986) *appeal denied,* 515 Pa. 598, 528 A.2d 955 (1987) (no intention by recipient of gift to donate it to entireties entity). Finally, "the Code presumes that all property, of any nature acquired during marriage is marital property." *Buckl v. Buckl,* 373 Pa.Super. 521, at 525, 542 A.2d 65 (1988).

The principle to be extrapolated from the Code's language, in conjunction with those cases which comment on § 401(f), lead us to the conclusion that it is the parties' demonstrated intent which dictates the characterization of marital property; if the property is accessible, available to both parties, and/or placed in a position where both have use or enjoyment of the property, it is to be treated as the property of both. This is the intention behind the equitable distribution provision from its inception, that is, that bare title may be not used as a shield to protect for the benefit of one party that which in reality belongs to the marriage. Where, as here, tax considerations dictate ostensible ownership, title to the vehicle is as determinative as the monetary subscription of the parties to purchase or upkeep, which is to say, not at all. Rather, we look to the intent of the parties made manifest in the uses to which the automobile was put. We find, as did the master, that it was placed at the service of the marriage, and is therefore marital property.

■ Appellant next contends that the valuation given the marital residence, which had been purchased by appellant prior to the marriage, was without basis in fact. This argument rests on the thesis that although a figure of $145,000, acceptable to both parties, was posited for the value of the house at the date of the marriage, the trial court failed to set forth its reasoning for reaching the figure of $271,430 given for value at time of separation.

Appellant relies for support on *Semasek v. Semasek,* 509 Pa. 282, 502 A.2d 109 (1985). In that case our supreme court remanded for further proceedings, holding that the record was inadequate where the trial court ignored expert opinion testimony, and assigned an unexplained value to

real property. Herein, appellant's specific complaint concerns the $44,150 valuation placed by the trial court on appellee's improvements to the property. The trial court ascribes this figure to its Adjudication in appellee's equity action. As appellant points out, the attribution is incorrect. In actuality the figure emanates from the master's acceptance of information supplied by appellee's expert and appellee herself. Relying on testimony which he expressly found to be credible, the master included in the value of the improvements appellee's replacement salary, since she left her job to do the renovations. The value of this labor was calculated at twenty (20) hours per week, fifty-two (52) weeks per year for four and one half (4½) years at a rate of $6.50 per hour, totalling $27,000. In addition, the master attributed $5,000 of the increase to paint and other materials, and $12,150 to a new pool apron and heating system. The remainder of the increase in value of the house rests upon the use of a 43.5% inflation rate to which appellee's expert testified. The trial court applied this rate to the original value of the property plus improvements, the $44,-150, and arrived at the objectionable value. Given that there is a foundation for these calculations, we find no violation of the rule in *Semasek*.

■ It is next argued that the trial court's finding with respect to the valuation of appellant's business should be disregarded because the value placed on the enterprise at time of separation was arrived at by a different method than that used to calculate worth at the time the parties married.[8] Since the data supplied by appellant's expert was adopted, reluctantly, by the master for valuation at the time of the parties' marriage, appellant's complaint is directed toward the variant method, and information, utilized for time of separation.

**8.** There is no dispute that appellant's initial interest in the business was a gift from his father, and that the gift predates the marriage. The corporation under consideration is a direct successor to the original enterprise, and was found by the master not to constitute marital property. It is therefore only the increase in value during coverture in which appellee has an interest.

In addressing a claim concerning the reliability of a valuation method, although in the context of realty, this court stated that;

> The Divorce Code does not include a specific method of valuing assets. We have previously held that the court must exercise its discretion, relying upon the estimates and inventories submitted by both parties, the records of purchase prices, and appraisals. In determining the value of marital property, the court is free to accept all of the testimony, portions of the testimony, or none of the testimony regarding the true and correct value of the property.

*Aletto v. Aletto,* 371 Pa.Super. 230, 242, 537 A.2d 1383, 1389 (1988) (citations omitted).

Here the master rejected the analyses provided by both parties' experts of the financial data supplied by appellant. Instead, the master made his own calculations using the capitalization of earnings method as described in Revenue Ruling 59–60, C.B. 1959–1237. By this system, the valuator determines the average net earnings of the corporation over a five year span, then multiplies this figure by an appropriate capitalization rate.[9] The trial court accepted the results thus obtained. Appellant's charge that the number arrived at was the trial court's invention has, as the master's report demonstrates, no validity. Further, appellant has nowhere pointed to an error in either base figures or the arithmetic imposed upon them. "Moreover, it is an accepted principle of law that when evidence of a particular fact at issue is peculiarly within the the control of a party, that party may be subjected to a burden of production." *Id.,* 371 Pa.Superior Ct. at 237 n. 5, 537 A.2d 1386 n. 5. Appellant has failed to meet this burden.[10]

9. For a discussion of Revenue Ruling 59–60, C.B. 1959–1237, *see* J.A. Rounik, I *Pennsylvania Matrimonial Practice* § 18:22 (1986).

10. One of the major difficulties encountered by the master was in dealing with appellant's own creative accounting methods, the result of a policy to devise an artificially favorable tax situation.

■ It is next argued that the trial court erred in awarding interest, to be calculated from date of separation, on appellee's equitable distribution allotment. Appellant claims that interest is inappropriate because delays in the proceedings could be attributed to appellee, and because the award itself consisted only of a share in the increased value of non-marital property. It is contended that because the interest award was justified on the basis that appellant had had use of all assets since date of separation, and since the property was adjudicated to be his own and therefore non-marital, he is being penalized for appellee's dilatory behavior.

We agree that under the particular facts of this case, the award of interest was inappropriate. Although there is precedent for the award of reparations to a dispossessed spouse, it is customarily for the fair rental value of the marital residence, *Hutnik, supra,* the purpose being to compensate the party out of possession for his or her "rights and interests in the land." *Gee v. Gee,* 314 Pa.Super. 31, 35 n. 2, 460 A.2d 358, 360 n. 2 (1983). There is no Pennsylvania authority for extending the *Gee* principle to include personal as well as real property. Further, as appellant points out, there is no Pennsylvania authority for the proposition that interest is forthcoming on an equitable distribution award otherwise than pursuant to the court's equitable powers under § 401(c).[11] In *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986), we found that the trial court correctly denied the appellee's claim for delay damages because she was receiving support which "adequately compensated her for the delay in receiving her share of the marital assets." *Id.,* 357 Pa.Superior Ct. at 352, 516 A.2d 17. Herein, appellee was denied support at the inception of the action by reason of infidelity.

11. 23 Pa.S.A. § 401(c) In all matrimonial causes the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

Further, without the delays in proceeding, the divorce would have proceeded under the 1929 Law, leaving appellee in receipt of little or nothing. Having impeded resolution of this case, appellee is entitled to equitable compensation under the Code; she need not be doubly rewarded for acting to her own advantage.[12] We therefore reverse the award of interest.

██ Finally, appellant assigns error to the court's award of counsel fees. Our standard of review in this regard was recently reiterated in *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987).

> In determining the propriety of an award of counsel fees, we also utilize an abuse of discretion standard of review. However, counsel fees are not awarded automatically. "Actual need must be shown in order to justify an award." Counsel fees are appropriate when necessary to put the parties "on a par" in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce.

*Id.*, 365 Pa.Superior Ct. at 415, 529 A.2d 1126 (citations omitted).

Herein the trial court, adopting the master's assessment of appellee's legal debts,[13] awarded appellee $10,000 in counsel fees, an amount representing less than costs incurred. The master, while noting the large amount of cash forthcoming to appellee under the distribution scheme, nevertheless found that

12. Even assuming that there were entitlement under equitable principles, the court improperly structured the award. "The general rule is that a party is entitled to interest on a judgement from the date of verdict." *Garbish v. Malvern Federal Savings and Loan Assoc.*, 358 Pa.Super. 282, 305–306, 517 A.2d 547, 559 (1986); *Sands v. Pennsylvania Insurance Guaranty Assoc.*, 283 Pa.Super. 217, 423 A.2d 1224 (1980). In the context of divorce, for verdict, read decree of equitable distribution. Here interest was computed from date of separation, prior to any determination in appellee's favor.

13. The master found that as of the Report, submitted in May of 1983, appellee had incurred total legal expenses of $26,521.54. These have doubtless increased.

"a substantial amount of the time and effort expended by Mrs. Fitzpatrick's attorneys (and experts) was related to an investigation of Mr. Fitzpatrick's income and business interests, the records for which were admitted by Mr. Fitzpatrick's accountant to be inaccurate. Said inaccuracies were not merely negligent but were intentional in an effort to deceive the Internal Revenue Service and other taxing authorities."

(Second Report of Special Master and Examiner at 52–53).

Appellee's prospective receipt of a large amount of cash vitiates what would otherwise constitute need, which is the proper basis on which attorney's fees and court costs are to be recompensed. *Vadja v. Vadja,* 337 Pa.Super. 573, 487 A.2d 409 (1985). Here, the award was made because of appellant's reprehensible bookkeeping practices. Without discussing appellee's role in protracting this litigation, we find that the award of attorney's fees was unjustified, and we accordingly reverse this provision of the decree.

The order of the trial court is affirmed in part and reversed in part.

WIEAND, J., concurs in the result.