673 A.2d 382

**Rigmor B. LITMANS, Appellant,**

v.

**Murray I. LITMANS.**

**Rigmor B. LITMANS**

v.

**Murray I. LITMANS, Appellant.**

Superior Court of Pennsylvania.

Argued October 26, 1995.

Filed March 20, 1996.

212

214

Susan Curran, Pittsburgh, for Rigmor Litmans.

Chris F. Gillotti, Pittsburgh, for Murray Litmans.

Before TAMILIA, FORD ELLIOTT and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the lower court's order denying in part and granting in part the parties' exceptions to its decree of equitable distribution. We affirm in part and reverse in part.

The lower court comprehensively stated the facts underlying the instant case:

Plaintiff [appellant] Rigmor Litmans ("Wife") and defendant [appellee/cross-appellant] Murray Litmans ("Husband") were married on July 8, 1967. On September 18, 1985, the parties separated and Wife left the family residence. The parties were divorced on March 10, 1992. The parties had two children during the marriage: Ian, who was born on December 22, 1969, and was 23 years old at the time of the hearing; and Brian, who was born on May 20, 1972, and was 21 years old at the time of the hearing [June 21–23, 1993].

Husband's mother died in May 1969 and Husband inherited from her estate a residence at 5512 Dunmoyle Street, Pittsburgh, Allegheny County. Husband also inherited the majority .of the furnishings in the residence and certain jewelry. From January 1969 through September 1985 the

parties lived together in the Dunmoyle Street residence. Husband and the parties' children continued to live there even after Wife had left the residence. During the marriage Wife handled the family finances and paid all of the bills. Wife was a heavy drinker in the 1970's and all parties agree [that] she was a problem drinker by 1980.

Wife was 52 years old at the time of the hearing. She is a graduate of a university in Sweden and has the equivalent of a Master's Degree in French. Since November 1988 she has been employed as a secretary at TYK Refractories. Her starting salary was $12,000 per year and she now earns approximately $12,500 per year. Wife enjoys her job and does not want to look elsewhere for employment that pays more. In 1993, Wife was involved in a serious automobile accident. She has since recovered and is working again.

Husband was 56 years old at the time of the hearing. He is an attorney. In 1981, Husband incorporated the private practice of M.I. Litmans, P.C. of which he is the sole shareholder and manager. In 1985, Husband suffered a heart attack and underwent by-pass surgery. After his recovery, in April 1986, he left private practice to become a partner at Eckert Seamans Cherin & Mellot (hereinafter "Eckert Seamans") where he grossed over $123,000 the first year. Husband left Eckert Seamans in December 1989. In January 1990 he joined the Karlovitz firm which dissolved shortly thereafter. In 1990, Husband became a partner with Meyer, Darragh, Buckler, Bebenek & Eck (hereinafter "Meyer Darragh") and stayed there for a year. At Meyer Darragh he made $10,000 per month. From 1990 until June 30, 1992, Husband was a partner with Frank Bernstein, et al. in Maryland and was earning $12,000 per month. This firm dissolved on June 30, 1992. In the summer of 1992, Husband became a partner with the Washington D.C. firm of Schnader, Harrison, Segal and Lewis at a contract salary of $240,000 per year. He is currently employed with Schnader, but now is compensated pursuant to a point system which grosses him $140,000 per year.

When the parties separated their son Ian was enrolled in the Cardigan Mountain school in New Hampshire and their son Brian was enrolled at Shadyside Academy. After separation, Husband continued to maintain the children in private schools as had been the intention of both parties....

Following the separation, an Order was entered requiring Husband to pay Wife alimony *pendente lite* ("APL") in the amount of $685 per month plus $100 per month for medical expenses. From June 21 through June 23, 1993, a hearing was held to determine equitable distribution of the parties' marital estate. After hearing arguments and considering the evidence presented, this court issued its Findings of Fact and Decree Nisi. Both parties filed Motions for Post–Trial Relief. The court granted in part and denied in part Wife's Motion for Post–Trial Relief. In addition, the Court denied Husband's Motion for Post–Trial Relief. Wife has appealed and Husband has cross-appealed.

Trial court opinion, March 7, 1995, at 1–3. On appeal, wife/appellant has raised the following issues:

1. Whether the trial court erred in its valuation of the Butcher Singer Investment Accounts?

2. Whether the trial court erred in its valuation and distribution of the marital estate by treating the maturity value of the pension and profit sharing plan certificates of deposit as present value, thereby awarding to husband a disproportionate share of the marital estate?

3. Whether the trial court erred in failing to grant wife's petition for modification of alimony pendente lite or her petition for counsel fees?

4. Whether the trial court erred in its inclusion in marital debt $78,966 in loans from the corporate pension and profit sharing plans to husband?

Husband/cross-appellant raises the following additional issues on appeal:

1. Whether the trial court erred in valuing the inherited marital residence as of the date of the hearing rather than the date of separation?

2. Whether the trial court erred in failing to reduce the marital estate by the amount of marital debt that existed at the time of separation, including federal taxes, real estate taxes, private school tuition, utility bills and consumer debt?

3. Whether the trial court erred in failing to give husband credit for providing for the private school education of the children?

Before addressing these issues, we will first set forth our standard of review.

■ Our scope of review of an order of equitable distribution is limited. *Miller v. Miller*, 421 Pa.Super. 23, 617 A.2d 375 (1992), *appeal denied*, 525 Pa. 664, 583 A.2d 794 (1990). Such awards are within the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. *Id.* at 28, 617 A.2d at 377. "An abuse of discretion will be found by this court only if the trial court failed to follow proper legal procedures or misapplied the law." *Id.* at 28, 617 A.2d at 377–78.

Wife first contends that the trial court erred in its valuation of the Butcher Singer investment accounts by totalling the number of units held in the accounts rather than the dollar value of the holdings, and by failing to include the interest earned on the accounts. In its opinion of March 7, 1995, the trial court acknowledged that it had erred in valuing three accounts. The lower court, in its final order, valued account number 030–46592 (A1), at $54,553.00. In its opinion of March 7, 1995, the lower court admitted that this figure was incorrect and was the result of a typographical error. The lower court stated that the correct amount was $64,553.00. Trial court opinion, at 5. In her brief on appeal, wife indicates that she agrees with the correction made by the lower court in its March 7, 1995 opinion.

In that same opinion, the lower court also corrected the valuations of two other investment accounts. Trial court opinion, March 7, 1995, at 5–6. Wife indicates in her brief that she accepts the corrected valuations made by the lower court for these two accounts. Husband does not object to the

corrections made by the lower court in its March 7, 1995 opinion. Therefore, it is not necessary for us to further address this issue.

Wife next contends that the trial court erred in its valuation and distribution of the marital estate by treating the maturity value of the pension and profit sharing plan certificates of deposit as their present value. Wife argues that the present value of the certificates is much lower than their maturity value. By using the maturity value, wife asserts that she did not receive a fifty-five percent share of the marital estate, but rather only about forty-one percent.

At the hearing in the lower court, evidence was offered to the effect that the certificates would be worth $100,342.00 each at their maturity dates in the year 2004. Neither party has cited any other evidence of the value of the certificates which was offered in the lower court. In fact, wife/appellant admits that neither party submitted evidence as to the present value of the certificates. Brief for Wife/Appellant, at 12. The trial court, in its equitable distribution scheme, awarded wife both of the C.D.s.

In determining the value of marital property, the court is free to accept all, part, or none of the testimony as to the true and correct value of property. *Aletto v. Aletto,* 371 Pa.Super. 230, 537 A.2d 1383 (1988). "[W]here the evidence offered by one party is uncontradicted, the court may adopt this value although the resulting valuation would have been different if more accurate and complete evidence had been presented." *Holland v. Holland,* 403 Pa.Super. 116, 120, 588 A.2d 58, 60 (1991), *appeal denied,* 528 Pa. 611, 596 A.2d 158 (1991).

In the instant case, the trial court did not abuse its discretion in adopting the only valuation amount submitted by the parties. Wife now contends that the present value of the C.D.s is far less than the value assigned by the lower court. She failed, however, to present any such evidence in the lower court and thus cannot now raise the issue on appeal. Pa.

R.A.P., Rule 302(a), 42 Pa.C.S.A. (issues not raised in the lower court will not be considered for the first time on appeal).

■ Wife's contention that the lower court's distribution scheme is flawed because the court used the maturity value of the C.D.s must also fail. The lower court addressed this issue in its opinion of March 7, 1995, stating as follows:

The Court did consider that the maturity value will not be reached until 2004. Wife testified that the Certificates of Deposit had been set up for her by Husband in order for her to have retirement funds.

Trial court opinion, at 7.

Among the factors to be considered by a court in making an equitable distribution of property are:

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

23 Pa.C.S.A. § 3502(a). Considering the evidence of wife's minimal income from her own job, it was not an abuse of discretion for the trial court to distribute the marital assets so as to provide a substantial source of funds for wife in her retirement. The trial court's distribution scheme included a payment to wife of $81,787.38 in the three years following the order to effectuate the 55/45 distribution. Thus, in addition to the certificates of deposit and other marital assets awarded to her, wife will also receive a substantial amount of cash during the three years subsequent to the equitable distribution order. Wife has failed to prove that the court's award constituted an abuse of discretion.

Wife's next contention on appeal is that the lower court erred in failing to grant her petition for modification of alimony pendente lite, or in the alternative to grant her petition for counsel fees. The record shows that in 1986, the lower court awarded appellant alimony pendente lite (a.p.l.) in the amount of $685.00 per month plus $100.00 per month for medical expenses. The hearing officer's determination was

based on husband's earnings of $3,500.00 per month. The hearing officer noted that husband's actual net monthly income was $5,000.00 per month, but in light of husband's testimony that he would be working at less than his previous capacity due to heart surgery, the hearing officer used the amount of $3,500.00, or seventy percent of husband's actual net income. The hearing officer attributed to wife an earning capacity of $1,000.00 per month. Also considered in this determination was the fact that husband was supporting both children, in the amount of approximately $340.00 per month, and was also paying for an automobile and insurance for wife.

In November, 1991, wife filed a petition for modification of the amount of a.p.l. The basis for wife's petition was (1) husband's income had substantially increased; (2) both children had severed all ties with her; and (3) husband was no longer providing her with a car. The lower court ordered that the modification petition would be heard at equitable distribution.

In its decree nisi, the lower court denied appellant's petition for modification of a.p.l., and terminated the award. In denying wife's petition for modification, the lower court reasoned that "Wife's income has remained stagnant by her choice and Husband's income is approximately the same as it was at the time of the first order." Trial court opinion, March 7, 1995, at 13. Therefore, the lower court determined that a modification of a.p.l. was not warranted. *Id.* at 14.

The amount awarded as alimony pendente lite is within the sound discretion of the trial court and absent abuse of discretion, the appellate court will not disturb the trial court's award. *Murphy v. Murphy*, 410 Pa.Super. 146, 599 A.2d 647 (1991), *appeal denied*, 530 Pa. 633, 606 A.2d 902 (1992), *cert. denied*, 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992). "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *DeMasi v. DeMasi*, 408 Pa.Super. 414, 420, 597 A.2d 101, 104 (1991), *appeal*

*denied,* 535 Pa. 619, 629 A.2d 1380 (1993). "APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for that purpose, which turns on the economic resources available to the spouse." *Id.* at 421–22, 597 A.2d at 105.

 An award of alimony pendente lite may be modified or vacated by a change in circumstances. *Jeffery v. Jeffery,* 228 Pa.Super. 64, 296 A.2d 873 (1972). The award is always within the control of the court. *Id.* It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justifies a modification. *Commonwealth ex rel. Levy v. Levy,* 240 Pa.Super. 168, 361 A.2d 781 (1976) (construing order of child and spousal support). Before a revised order of a.p.l. arrearages may be entered, it is necessary to obtain testimony as to the petitioning spouse's economic circumstances. *Price v. Price,* 419 Pa.Super. 74, 614 A.2d 1386 (1992).

In the instant case, the evidence at trial showed that from 1986 to 1989, husband worked for Eckert Seamans law firm. Husband testified that his net income was less than his prior income from his own practice. N.T. June 21–23, 1993, at 246. From 1989 to 1990, husband worked for two other Pittsburgh law firms. In 1990, husband joined the Frank Bernstein law firm in Maryland. *Id.* at 250. This employment lasted until 1992. *Id.* at 253.[1] Husband then went to work for Schnader, Harrison, Segal & Lewis in Washington, D.C. *Id.* at 256. During 1992, husband earned $12,500 per month from this

1. The relevant time period for wife's petition for modification of a.p.l. is from November, 1991 to the time of the hearing. Wife has alleged that husband made certain sums while employed by the Frank Bernstein law firm during this time period. However, the citations to the reproduced record used by wife in her appellate brief do not contain this information. Wife has not referred us to any other location in the record which would support her contention as to husband's income during his employment with the Frank Bernstein law firm. However, the lower court, in its findings, determined that husband earned $12,000 per month during his employment with the Bernstein law firm, from 1990 until June 30, 1992.

firm. *Id.* at 257. At the time of the hearing in 1993, husband's gross monthly compensation was $10,400.

Husband conceded that his net monthly income has increased $2,176.00 per month from the time of the initial award of a.p.l. in 1986. Brief for appellee/husband, at 46. The amount of the increase is based on the difference between husband's present income and his $5,000.00 per month net income in 1986. Wife testified that she began working in 1988, and has a current yearly gross income of $12,500.00. *Id.* at 79. She also stated that she enjoys her present employment. *Id.* at 153–56. Although wife obtained the equivalent of a master's degree in French from a Swedish university in 1962, she was not employed in the work force from the time of the parties' marriage in 1967 until she obtained her present employment.

"An award of alimony pendente lite is designed to enable the dependent spouse to prosecute or to defend a divorce action." *DeMasi v. DeMasi*, 366 Pa.Super. 19, 38, 530 A.2d 871, 880 (1987), *appeal denied*, 517 Pa. 631, 539 A.2d 811 (1988).[2] "It is also designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." *Id.* at 38, 530 A.2d at 880. In ruling on a claim for alimony pendente lite, the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties. *Orr v. Orr*, 315 Pa.Super. 168, 461 A.2d 850 (1983).

In the instant case, the record demonstrates at least two changes in circumstances since the entry of the award of a.p.l. in 1986. First, husband had recovered from his heart surgery, a significant factor considered by the hearing officer in 1986. Due to this factor, the hearing officer based his award of a.p.l. on a net monthly income of $3,500.00 on the part of husband, or seventy percent of his normal net monthly income at that time. In addition, husband's net monthly

2. On subsequent appeal, *DeMasi v. DeMasi*, 408 Pa.Super. 414, 597 A.2d 101 (1991), *appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993).

income had increased by at least $2,000.00 per month during the time period relevant to the petition for modification.

Wife had also obtained employment since the entry of the award of a.p.l. This did not, however, amount to a change in circumstances, as the hearing officer in 1986 attributed to wife an earning capacity of $1,000.00 per month. In her present employment, wife earns a gross amount of just over $1,000.00 per month.

Wife's testimony at the hearing revealed a decline in her circumstances since the parties' separation. She lives in a rental unit, and because of irregularities in payments from husband, is sometimes behind in her rental payments. N.T. at 104–05. This is in contrast to the parties' life together when they lived mortgage-free in a residence given to husband by his mother. Husband continues to reside there. Wife has had on occasion to borrow money from her mother to sustain her. Wife no longer travels, as she did when married. Husband and the children, however, continue to travel extensively.

In denying wife's petition for modification, the lower court relied in part on wife's failure to obtain higher-paying employment. Wife testified that she enjoys her present job. She also testified that she has sought other employment since commencing her present employment, *id.* at 152, 155, but that she has not been offered employment at a higher salary. *Id.* at 155. Wife testified that she understands that she may not be able to continue in her present employment depending on her financial circumstances. *Id.* at 155–56. This testimony does not support an outright refusal by wife to obtain other employment, as suggested by the lower court.

The lower court also determined, in denying wife's petition for modification of a.p.l., that husband's income was approximately the same as it was at the time of the first order. An increase of $2,000.00 per month in *net* (disposable) income cannot be considered the "same" or even "approximately the same" as the prior base amount. An increase of $2,000.00 per month of net income is a significant amount, especially in light of the great disparity in earning ability between the parties

here and the amount of a.p.l. which wife received at the time of the hearing ($658.00 per month) (*i.e.,* husband's increase in net income is more than three times the total monthly amount of a.p.l. which wife was receiving at the time of the hearing).

It is clear from the testimony at trial that wife has not maintained a lifestyle approximating that of the parties during the marriage. In addition, wife demonstrated significant changes in circumstances since the entry of the original award of a.p.l. in 1986. Considering these factors, we find that the lower court abused its discretion in failing to grant wife's petition for modification (increase) of the amount of a.p.l. due to changed circumstances. We will reverse the lower court's order denying wife's petition and remand the case to the lower court for a determination of the amount of the increase.[3]

Wife contends that the lower court erred in failing to award her counsel fees. A claim that counsel fees were improperly denied is reviewed under the following standard:

We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another....

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution....

In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate.

*Perlberger v. Perlberger,* 426 Pa.Super. 245, 283, 626 A.2d 1186, 1206–07 (1993), *appeal denied,* 536 Pa. 628, 637 A.2d 289

---

3. The Support Guidelines should be considered in this determination. *See* Pa.R.C.P., Rule 1910.16–1(a), 42 Pa.C.S.A. (amount of alimony pendente lite shall be determined in accordance with the support guidelines).

(1993) (citations omitted). "Counsel fees are awarded only upon a showing of actual need." *Harasym v. Harasym*, 418 Pa.Super. 486, 496, 614 A.2d 742, 747 (1992).

In the instant case, the lower court determined that wife was not entitled to counsel fees because she had not demonstrated actual need. The court reasoned that wife is going to receive a large amount of cash as part of her share of equitable distribution, and therefore she did not demonstrate actual need. Trial court opinion, March 7, 1995, at 24–25. The lower court relied on *Fitzpatrick v. Fitzpatrick*, 377 Pa.Super. 268, 547 A.2d 362 (1988), for this result. Wife contends that the trial court erred in this determination because she needs the cash award to maintain her basic needs until her retirement funds mature in the year 2004. Brief for appellant Rigmor Litmans, at 18.

In *Fitzpatrick*, the trial court awarded wife $10,000 in counsel fees, an amount which was less than the costs incurred. *Id.* at 281, 547 A.2d at 369. On appeal, the Superior Court reversed the award, holding that "wife's prospective receipt of a large amount of cash vitiates what would otherwise constitute need, which is the proper basis on which attorney's fees and court costs are to be recompensed." *Id.* at 282, 547 A.2d at 369. Therefore, the *Fitzpatrick* court found the award of attorneys' fees to wife unjustified. The court's opinion in *Fitzpatrick* did not indicate the actual amount of cash wife was to receive.

The *Fitzpatrick* court relied on *Vajda v. Vajda*, 337 Pa.Super. 573, 487 A.2d 409 (1985) for its holding on the issue of counsel fees. In *Vajda*, the master awarded wife $3,192.06 in counsel fees. *Id.* at 579, 487 A.2d at 412. The trial court reduced this amount to $500.00. On appeal, the Superior Court affirmed the trial court's decision as to counsel fees, holding that wife would have substantial assets available after the marital residence was sold from which her attorney's fees could be satisfied. *Id.* at 579–80, 487 A.2d at 413.

In the instant case, wife is to receive $81,787.38 from husband within three years of the equitable distribution order,

either by payments of $2,272 per month or $27,263.00 once per year. She also received valuables amounting to approximately $28,000 and both of the certificates of deposit, which, in the year 2004, will each possess a value of more than $100,000. These certificates, however, are ostensibly for wife's retirement. *See supra.* Husband, on the other hand, received the increase in value of the marital residence. The residence was valued at $272,000.00 at the time of hearing. Husband additionally possesses a substantial wage-earning ability which wife does not approach.

It is apparent from the record that during the pendency of this action, husband paid wife $685.00 per month in alimony pendente lite. Husband, on the other hand, utilized substantial marital resources during the pendency of this action, in the form of various investment accounts, which were part of the marital estate. Although some or a substantial part of these funds was ostensibly used to pay for the education of the parties' children, the uses to which such funds were put were in many instances luxuries, and not strictly for educational expenses. *See* trial court opinion, at 16. Thus, while husband made a.p.l. payments to wife, he spent a substantial amount of the parties' marital assets during the pendency of the action.[4]

In determining whether the parties are on a "par" with one another as to cash available for counsel fees, *see Perlberger v. Perlberger, supra,* it appears that husband has a substantial monthly income and a house worth $272,000. Wife has a minimal income from her employment, $2,272 per month payments from husband for three years (or $81,787), and $28,000 worth of valuables. It is questionable in these circumstances whether the parties are on a "par" with respect to their abilities to pay counsel fees. However, wife has failed to document, or at least has failed to refer this court to the location of the documentation of the amount of counsel fees incurred and the services performed for those fees. Such

4. We note that the equitable distribution scheme takes this into account in that husband's portion of the equitable distribution award includes the investment accounts which he spent during the time since commencement of this action.

documentation is required because a factor to consider in an award of counsel fees is the "value of the services rendered." *Perlberger v. Perlberger, supra.* Without this basic information, we are unable to further review the trial court's decision that wife has not demonstrated actual need for counsel fees. Therefore, we conclude that no abuse of discretion has been demonstrated in the denial of counsel fees.

Wife contends that the lower court erred in including $78,-966.00 borrowed from husband's pension and profit sharing plan in the parties' marital debt. Appellant contends that these borrowed funds are "paper tigers" because the repayment of this debt would increase a marital asset proportionally. Appellee contends that the amount borrowed from husband's pension fund is a legitimate marital debt because these sums were withdrawn prior to separation to pay for the children's private school costs.

Between divorcing parties, debts which accrue to them jointly prior to separation are marital debts. *See Duff v. Duff,* 510 Pa. 251, 507 A.2d 371 (1986) (tax assessment liability accruing to parties from sale of stock prior to separation was joint liability to be included in computation of marital estate). The evidence in the instant case was that both wife and husband agreed to pursue a goal of private school education for their children, and that the parties were willing to sacrifice to pay for such education. N.T. June 21–23, 1993 at 106–08. Husband testified that he and his wife used the assets of the pension and profit sharing plans on occasion to fund the childrens' educations. *Id.* at 389. Husband specifically indicated that prior to separation, they had borrowed approximately $78,000 from the pension and profit sharing plan for this purpose. *Id.* at 389–90.

In an equitable distribution matter, the trial court, as finder of fact, is entitled to assess the credibility of the evidence presented. *Murphy v. Murphy, supra.* Here, the trial court apparently found husband's testimony credible as to when the borrowing of $78,000 from the pension and profit sharing plan occurred. As an appellate court, we will not

disturb this credibility finding. *Murphy*, 410 Pa.Super. at 158, 599 A.2d at 653. Thus, since the parties borrowed the sum at issue from husband's pension and profit sharing plan prior to their separation, the lower court did not err in including this amount as marital debt for purposes of equitable distribution.

We will now address the issues husband raises in his cross-appeal. His first contention is that the lower court erred in valuing the marital residence as of the date of hearing rather than as of the date of separation. Husband asserts that the parties' residence during marriage was not a marital asset because it was devised personally to him by his mother; accordingly, under 23 Pa.C.S.A. § 3501(a), the only marital asset connected with the residence was the increase in its value to the date of the parties' separation.

The lower court determined that the increase in value of the property *during the parties' marriage* was marital property. The court reasoned that "the entire asset had been acquired during the marriage and the parties had lived together in the residence for over fifteen years." Accordingly, the trial court decided to utilize the date of distribution, rather than the date of separation, to value the residence.

The record shows that husband's mother devised the residence to him in May, 1969. At that time, the property was valued at $65,000. At the time of the parties' separation in September, 1985, the value of the residence had increased to $170,000. By the hearing of June, 1993, the residence was valued at $272,000. The lower court subtracted the value of the home in 1969 from its value at the hearing, and attributed to the marital estate an amount of $207,000.00. Husband argues that the proper valuation of the property would have yielded $105,000.00 as the amount to be assigned to the marital estate.

The trial court cited *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988) and *Solomon v. Solomon,* 531 Pa. 113, 611 A.2d 686 (1992), for its decision to use the date of distribution for valuing the marital residence. In *Sutliff,* the Pennsylvania Supreme Court addressed the issue of the appropriate valua-

tion date for certain marital assets. The court found that the Divorce Code contains "no express provision" which governs the selection of such a date, but held that it was "implicit" in the statutory provisions governing equitable distribution "that a valuation date reasonably proximate to the date of distribution" be utilized. *Sutliff*, 518 Pa. at 381, 543 A.2d at 536. The court in *Sutliff* was concerned with changes in the values of marital assets which might occur over the course of time, particularly if there had been a considerable passage of time between separation and distribution. *Id.* at 383, 543 A.2d at 536–37. The court noted specifically in *Sutliff* that the question before it was "not whether particular assets are to be deemed marital...." *Id.* at 381, 543 A.2d at 536.

In *Solomon*, the court considered that issue. Appellant wife became the beneficiary of a trust after the parties were married. Under the trust provisions, she was entitled to receive income from the trust and could withdraw up to $6,000 of principal. At the age of thirty-five, wife became entitled to withdraw up to one-half of the principal. Wife became thirty-five prior to the parties' separation. The trust further provided that upon wife's attainment of age forty, she was entitled to withdraw the remaining principal. 531 Pa. at 117–18, 611 A.2d at 688.

The trial court determined that the principal of the trust was a gift and therefore was not marital property. The court found that the increase in value of one-half of the principal of the trust after wife attained thirty-five and before the date of separation was marital property. Since wife did not attain the age of forty until after separation, the increase in value of the other one-half of the principal was not marital property. *Id.* at 118–19, 611 A.2d at 689. On appeal, the Superior Court, relying on *Sutliff, supra*, held that the full increase in value of the trust was marital property because wife had attained age forty at the time of the hearing. *Id.* at 119–20, 611 A.2d at 689.

The Pennsylvania Supreme Court found that the Superior Court erred in this determination. The court agreed that the principal of the trust was clearly non-marital property. *Id.* at

120, 611 A.2d at 689. However, the Supreme Court disagreed with the Superior Court's approach which determined the increase in value at the time of distribution. The Supreme Court reasoned that equitable considerations such as those present in *Sutliff* could not "serve to reclassify assets that are properly deemed to be non-marital" under the applicable provisions of the Divorce Code. *Id.* at 121, 611 A.2d at 690.

The court then referred to the definition of marital property in effect at the time of the commencement of the proceedings in *Solomon:* [5]

> For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except,
>
> (3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

23 P.S. § 401(e) (effective April 2, 1980), amended December 19, 1990, currently 23 Pa.C.S.A. § 3501(a). Based on this statute, the Supreme Court found that appellant/wife in *Solomon* did not acquire ownership and control over any of the trust until she attained age thirty-five. At that age, she obtained the right to one-half of the principal of the trust, "which gave rise to increases in value qualifying as marital property," but no right to the remaining one-half of the principal. *Id.* at 122, 611 A.2d at 690. The court then determined:

> Since the parties separated prior to [wife] attaining age forty, [wife] did not obtain ownership or control over the right to the remaining one-half of the principal pursuant to Section 401(e) *prior to the date of final separation,* and thus, the increase in value of this remaining one-half interest cannot be included as marital property.

*Id.*

Addressing *Sutliff* again, the *Solomon* court stated that protracted litigation "simply cannot affect the determination of whether a particular asset qualifies as marital property." *Id.* at 123, 611 A.2d at 691. In terms of property properly

---

5. The action in *Solomon* commenced on July 30, 1984.

identified as marital, however, an equitable distribution court is indeed to consider the increase in value of the marital asset from the date of separation to the date of distribution, as indicated in *Sutliff*. *Id.*

The *Solomon* court then added a footnote which is at the crux of the issue in the instant case:

> We note that in applying this concept to the case sub judice, *the trial court would be necessarily compelled to take into consideration any change in value of the portion of the trust determined to be marital property, which occurs after the date of final separation through the date of distribution*. This only involves consideration of the change in value of the marital assets during the period of delay pursuant to our mandate in *Sutliff*, and thus, does not include any change in value of either the non-marital principal of the trust itself or that portion of the increase in value of the trust determined to be non-marital property.

*Id.* at 123 n. 11, 611 A.2d at 691 n. 11 (emphasis added). The lower court relied upon this footnote in the instant case in its decision to value the residence as of the date of distribution. Similarly, wife herein cites the *Solomon* footnote in support of her contention that the trial court did not err in this determination.

In interpreting this footnote, we note first that the *Solomon* court did not in fact remand the case to the lower court for a determination as described in footnote eleven. Having decided that the Superior Court had erred in its application of *Sutliff* to enlarge the portion of the trust deemed to have been acquired by the wife in *Solomon*, the Supreme Court simply reinstated the equitable distribution scheme of the lower court. *Id.* at 126, 611 A.2d at 693. Under that scheme, as we previously indicated, the increase in value of one-half the principal of the trust after wife attained age thirty-five *until the date of final separation* was deemed marital property. *Id.* at 118–19, 611 A.2d at 688. Thus, despite footnote eleven referring to changes in value of marital assets prior to distribution, the Supreme Court in *Solomon* did not remand the case to the lower court for such a determination. We must

thus conclude, as husband in the instant case has argued, that the court's statement in footnote eleven is mere dictum, and that the reinstatement of the trial court's order, which limited the increase in value of the non-marital asset to that which occurred prior to final separation, represents the actual decision of the *Solomon* court.

In *Smith v. Smith,* 439 Pa.Super. 283, 653 A.2d 1259 (1995), *appeal denied,* 541 Pa. 641, 663 A.2d 693 (1995), the court considered the valuation of gifts of stock to wife from her father during the marriage as well as an inheritance from wife's mother, which also occurred during the marriage. The court determined that these items were not marital property under the current statute, 23 Pa.C.S. § 3501(a), but that the increase in value of this property during the marriage was. *Id.* at 296, 653 A.2d at 1265. Wife presented expert testimony to the effect that the gifts of stock increased from August, 1955 (date of the marriage) to June, 1985 (date of separation) in the amount of $12,055.00. The increase in value of the inheritance was determined to be $11,094.00. *Id.* at 297, 653 A.2d at 1266. The master and trial court adopted this valuation. *Id.*

Husband argued that there was error in the valuation. The panel determined that wife had met her burden of producing evidence of the increased value of the gifts, and found that if husband disagreed with wife's valuation, it was his burden to provide the court with an alternative one. *Id.* at 299, 653 A.2d at 1267. The court reasoned that "[w]ith the help of a financial expert, Husband could have calculated the increase in the value of the stocks from the date Wife received the shares *until the date of separation." Id.* (emphasis added). Thus, in *Smith,* the date of separation was held to be the appropriate date for determining the increase in value of the non-marital assets under section 3501(a).

In *Ling v. Ling,* 442 Pa.Super. 106, 658 A.2d 805 (1995), *appeal denied,* 542 Pa. 671, 668 A.2d 1134 (1995), a panel of this court construed the proper valuation of a gift to wife of stock during the marriage. At the time of the gift, the stock was worth $22,400. Wife surrendered the shares in 1986 and

received $90,000. In May, 1987, the date of the parties' separation, she reinvested $80,000. In 1988 and 1989, wife withdrew $11,454 and $10,969, leaving a balance in 1990 of $57,937. The trial court found that $57,959 of the stock could be characterized as marital property. This was calculated as follows: $57,937 plus $11,454 plus $10,969 minus $22,400, equals $57,959. *Id.* at 107–08, 658 A.2d at 806.

On appeal, the panel determined that the lower court had correctly found "the $22,400 gift appellee received during the course of her marriage was not marital property, while the increase in value thereof during the parties' marriage was properly designated marital property for the purpose of equitable distribution." *Id.* at 108, 658 A.2d at 806. However, the issue on appeal did not concern the increase in value of the gift, but whether interest income from the stock received after separation but prior to distribution was marital property. The court determined that it was not, finding that the asset in question, which was an inheritance, was not marital property, and husband was entitled to share it only to the extent of the increase in value "to the date of separation and not to the date of distribution." *Id.* at 110, 658 A.2d at 807. Similarly, the court determined that the value of the portion of the inheritance characterized as marital property by the lower court had a "commonsense accuracy," in that if the value of the gift when received ($22,400) is deducted from $80,000 (the amount reinvested during the same month as the parties' separation), the result is $59,600, which is similar to the lower court's determination ($57,959). *Id.* at 108 n. 3, 658 A.2d at 807. Again, the *Ling* case illustrates that when the increase in value of non-marital property is calculated, the courts use the date of separation.

In the instant case, the lower court used the date of distribution to determine the increase in value of the non-marital asset, the residence at Dunmoyle Street. Under the above authority, this was error. The proper date for determining the increase in value of the residence was the date of separation. As to the delay in distribution which followed (1985 to 1993), we find footnote eleven in *Solomon* to refer to a

situation in which the increase in value of a non-marital asset is determined as of the date of separation, there then ensues a long period of delay between separation and distribution, and the asset itself then decreases in value by the time of distribution. In such a case, footnote eleven would require the trial court to consider the "change in value" of the non-marital asset as a result of the delay. In the instant case, however, it is clear that the residence did not decrease, but increased in value during the period of delay (1985 to 1993). Accordingly, the increase in value of this non-marital asset should have been determined as of the date of separation.

■ Husband's next contention on appeal is that the trial court failed to reduce the marital estate by the amount of "legitimate debt" existing at the time of separation. Husband lists the following items of debt as proper marital debt excluded by the trial court: 1985 quarterly income tax payment, $5,000; commercial and household debt, $6,600; children's school tuition, $12,850; and delinquent real estate taxes and water and sewage bills, $8,115. As to the real estate and utility bills, the lower court held that these items were not legitimate marital debt because "Wife was no longer living in the house," and that it would be "unjust to make Wife pay for Husband's expenses when Wife was not employed." Trial court opinion, at 17. The trial court did not find any additional amount of "consumer debt" to be credible because "Husband failed to show sufficient documentation for any of those amounts." *Id.*

We have reviewed husband's contention in light of the citations to the record he has provided. We are unable to locate any documentation of the amounts claimed other than an exhibit which simply lists the amounts claimed without providing supporting documentation, and husband's own testimony. The trial court hearing an equitable distribution matter is not required to accept the testimony of any witness. *Murphy v. Murphy, supra.* Here, there was no documentation to support husband's allegations as to marital debt. We conclude that the lower court did not err in finding that

husband failed to provide sufficient documentation of the amounts claimed as proper marital debt.

Husband's final contention on appeal is that the lower court abused its discretion in failing to give him credit for private school educational expenses which he incurred through the date of hearing. The lower court refused to give husband credit for any of these expenses on the basis that the expenses claimed went well beyond the intentions of the parties as to private school education. Trial court opinion at 16. The court found that many of the expenses claimed were luxuries which were unreasonable. *Id.*

 Parents have a legal obligation to provide for the reasonable expenses of raising their children. *Francis v. Francis,* 358 Pa.Super. 391, 517 A.2d 997 (1986). A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation. *Id.* at 395–96, 517 A.2d at 999–1000. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child. *Id.*

 In the instant case, the parties' children continued to attend private school after the parents separated. The record shows that: (1) in 1986, the hearing officer reduced the amount of a.p.l. to be awarded wife by $340.00 in recognition of the fact that the children were in husband's custody; (2) husband used some of the marital assets to pay for the children's school expenses; (3) the expenses claimed by husband included items which could properly be deemed luxuries such as ski trips and international travel; (4) one of the children did not perform well in school; (5) both of the children were legal adults at the time of the hearing and neither had sustained an ongoing relationship with their mother. We note also that husband has not referred to any documentation other than an exhibit admitted in connection with the hearing, which simply lists the expenses husband claims, in support of the expenses alleged.

Husband relies on *Perlberger v. Perlberger, supra,* in support of his position that he is entitled to credit for the expenses. In *Perlberger,* husband contended that wife should repay $52,000 to certain bank accounts belonging to the parties' children (PUGMA [6] accounts). A panel of Superior Court vacated the order of the trial court which required wife to repay that amount. The Superior Court remanded the case to the lower court for a hearing to determine the reasonable needs of the children and what portion of the PUGMA account funds had been expended for the children's reasonable needs. *Id.,* 426 Pa.Super. at 274–76, 626 A.2d at 1202–03. The court held that it would be appropriate under PUGMA, to use the assets in the accounts for the children's benefit as long as the parents "expended their own resources before turning to the custodial funds." *Id.* at 274, 626 A.2d at 1201–02.

The instant case does not involve the use of assets belonging to the children for their benefit, but the use of marital assets to satisfy an obligation of support. Thus, *Perlberger* is not applicable. The lower court here found many of the expenses claimed by husband to be luxury items and thus unreasonable. Although the lower court did not specifically address the issue of the reasonableness of private school tuition, we find no abuse of discretion in the trial court's decision to give husband no credit for those expenses.

As we have noted, husband did not provide sufficient documentation of the claimed expenses, including tuition. Additionally, because wife's a.p.l. was reduced a significant amount due to the husband's custody of the children, wife in effect contributed substantial support to the children's education, given her limited income. Further, husband fulfilled his obligation to support the children by depleting marital assets. He displayed poor financial judgment in using these assets for purposes unrelated or only tangentially related to the children's education.

The lower court in the instant case awarded husband the marital assets which he used to fund the children's expenses.

6. Pennsylvania Uniform Gifts to Minors Act, 20 Pa.C.S. § 5301 *et seq.*

We find this to be a reasonable exercise of the trial court's discretion and a fair distribution of the assets under the circumstances presented. We find no abuse of discretion by the lower court in denying husband credit for the expenses claimed.

Order affirmed in part and reversed in part; case remanded to lower court for further proceedings in accordance with this decision.