J-A04042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HARRY LUKE SCOTT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRACE MARIE HOFFMAN, | : | |
| | : | |
| Appellant | : | No. 619 EDA 2019 |

Appeal from the Decree Entered January 9, 2019
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s):  No. 08-09260

| | | |
|---|---|---|
| HARRY LUKE SCOTT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRACE MARIE HOFFMAN | : | No. 621 EDA 2019 |

Appeal from the Decree Entered January 9, 2019
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s):  No. 08-09260

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, P.J.:                          Filed: May 7, 2020

Harry Luke Scott ("Husband") appeals, and Grace Marie Hoffman

("Wife") cross-appeals, the final equitable distribution and alimony *pendente*

*lite* ("APL") order entered on December 26, 2018, by the Court of Common

Pleas of Montgomery County. We affirm all but one aspect of that order which

---

[*] Retired Senior Judge assigned to the Superior Court.

relates to the valuation of Husband's pre-marital interest in one of his businesses. As to that one aspect, we reverse and remand for calculations, and a corresponding disposition, consistent with this memorandum.

Husband and Wife began living together in 1997 and had a child in 1999. They were married on October 8, 2004. The parties separated on January 15, 2008, and Husband filed for divorce in April of that same year. The parties have subsequently "engaged in extensive litigation before numerous Judges, Support Masters and Custody Conciliators" for, at this point, almost twelve years. Trial Court Opinion, 9/3/19, at 1.

The longevity of the litigation is due in large part to a discovery process that can fairly be described as combative and exhausting. The trial court provided a detailed recitation of the discovery process in its opinion, **see** Trial Court Opinion, 9/3/19, at 3 -17, but summarized the process as follows:

> A review of the record of the history of this matter, prior to the assignment of the matter to the undersigned, reflects an extraordinary discovery process that transpired over many years and involved many Judges previously assigned to the case. In summary, there is a strong impression of the proverbial game of 'cat and mouse' in terms of what financial information/documentation Husband would voluntary produce with numerous discovery Orders, and contempt Orders related thereto, entered over the years.
>
> Most prominent of the Orders is an eight (8) page Order from October 22, 2013 in which Judge Garrettt D. Page directed, after a hearing, that Husband's failure to comply would result in an immediate bench warrant for Husband's arrest and remand to custody of Montgomery County Correctional Facility 'until such

> time as full and complete discovery responses were provided or up to six months.' The same Order also provided for the payment of $270,000 in counsel fees/sanctions. In the thirty (30) years of experience in family court matters by the undersigned, these extremely drastic types of results in discovery skirmishes is quite extraordinary.

Trial Court Opinion, 12/26/18, at 20.

The discovery process culminated in a three-day protracted hearing on Wife's exceptions to the Hearing Master's equitable distribution report entered on July 7, 2017 and the parties' exceptions to the Support Master's APL report entered on November 6, 2017. At the hearing, Wife testified that she worked as a hairdresser until 2008, when she closed her salon due to a "nervous breakdown" stemming from her separation from Husband. **See** N.T. Hearing on Exceptions to Equitable Distribution Report, 12/11/17, at 202. According to the trial court, because of her health issues, Wife's "prospects of employment at her prior level is [not] a reasonable expectation." Trial Court Opinion, 9/3/19, at 2. Her 2016 tax return reflected an overall negative income of - $3,024.

Meanwhile, there was testimony at the hearing that Husband has a separate, non-marital estate in the range of three million dollars. His main sources of income are his snow removal business, Global Management, Inc., d/b/a Cenova ("Cenova"), and a portfolio of 30 residential rental properties. According to Husband's 2016 tax return, he has an annual income of $752, 255.

Perhaps not surprisingly, "nearly every single asset was disputed by the parties as to their value (and dates of value), and even their status as marital or non-marital assets" at the hearing. Trial Court Opinion, 9/3/19, at 26. Husband and Wife each offered different values for all but one of the real estate properties involved. Both parties also presented differing expert testimony on the fair market value of Cenova as well as their own appraiser to support their significantly different valuation of the former marital residence.

Following the hearing, the court directed the parties to file post-hearing submissions. "Due to the complexity of Husband's real estate interests (with ten (10) plus years of various acquisitions, transfers, and valuation dates) and a lack of testimony on many of them," the court also directed the parties to file a joint side-by-side summary of the real estate at issue. Trial Court Opinion, 9/13/19, at 18 n.16. The summary was to list each party's respective asserted value of the property at issue and a brief description of the dispute over the property's value.

The parties did not comply. Instead, Husband and Wife each submitted their own version of a side-by-side summary of the realty properties, which "imposed a burden on the [trial] Court to expend significant time and effort in order to painstakingly plow through and reconcile the various values." Trial Court Opinion, 12/26/18, at 3.

On December 26, 2018, the trial court entered its final equitable distribution and APL order, accompanied by a twenty-six page opinion in support of that order. In the order, the trial court determined that the total value of the marital estate was $2,300,064. The court awarded 55% of the marital assets to Wife, and the remaining 45% to Husband. The court denied Husband's APL exceptions and granted Wife's APL exceptions, and directed Husband to pay monthly APL arrears in the amount of $19,515 for the time period of July 13, 2016 through September 14, 2017 and then in the amount of $21,023 from September 15, 2017 through the date of the order.[1] The court also denied Wife's petition for alimony and directed Husband to pay $75,000 to Wife for counsel fees.

The trial court issued a divorce decree on January 9, 2019. Wife filed a notice of appeal on February 5, 2019 and Husband filed his 11 days later.[2] Both parties appealed the divorce decree and the December 26, 2018 equitable distribution and APL order. Wife also appealed an order entered by the Court of Common Pleas of Montgomery County on February 25, 2016 and Husband appealed an order by that same court dated August 11, 2017. The

_____

[1] The difference in the amount of APL during the two periods is due to the fact that Husband had physical custody of his and Wife's child and was entitled to a child support offset until September 14, 2017, when the child turned 18.

[2] Under the Rules of Appellate Procedure, Husband is considered the designated appellant and Wife is considered the designated cross-appellant in this appeal. *See* Pa.R.A.P. 2136.

trial court directed the parties to file concise statements of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) and subsequently issued its fifty-seven page opinion pursuant to Pa.R.A.P. 1925(a) on September 3, 2019.

For ease of discussion, we will address the parties' equitable distribution issues first.[3]

In an action for divorce, the "court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S.A § 3502(a). Marital property generally includes all property acquired by either party during the marriage and the increase in value of certain non-marital property during the marriage. **See id**. at § 3501(a). "The trial court has the authority to divide the award as the equities presented in the particular case may require." **Mercatell v. Mercatell**, 854 A.2d 609, 611 (Pa. Super. 2004) (citation omitted). "Equitable distribution does not presume an equal division of marital property and the goal of economic justice will often dictate otherwise." **Id.** at 612.

---

[3] The trial court outlined the full list of Husband's, and then Wife's, issues over the course of four pages of its opinion. **See** Trial Court Opinion, 9/3/19, at 20-23. While this Court typically addresses issues in the order presented by the appellant, it made more sense to not only divide the issues in this appeal and cross-appeal by subject (equitable distribution and APL), but to address the issues in the appeal and cross-appeal on a particular order or particular asset at the same time.

"When reviewing the records of the proceedings, [this Court is] guided by the fact that trial courts have broad powers to effectuate justice." **Murphy v. Murphy**, 599 A.2d 647, 653 (Pa. Super. 1991). Given these broad powers, we will disturb a trial court's equitable distribution of marital property only upon a finding that the trial court has abused its discretion. **See id**. "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence" that the trial court misapplied the law or failed to follow proper legal procedure. **Smith v. Smith**, 904 A.2d 15, 18 (Pa. Super. 2006).

Here, the trial court faced the arduous task of valuing dozens of assets in highly contested circumstances. Regarding the valuation of assets, this Court has stated:

> The Divorce Code does not set forth a specific method for valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves economic justice. In valuing marital assets, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices and appraisals submitted by both parties. … [T]he court is free to accept all, part or none of the evidence as to the true and correct value of the property.

**Carney v. Carney**, 167 A.3d 127, 131-32 (Pa. Super. 2017)(citations omitted).

Both Husband and Wife challenge the trial court's valuation, treatment and characterization of individual assets in its overall equitable distribution award. Before addressing those individual claims as to specific assets, we first

consider Wife's broader claim that the trial court abused its discretion by only awarding her 55% of the marital assets. This claim fails.

The Divorce Code lists several factors the trial court must consider when fashioning equitable distribution awards. Those factors include: the length of the marriage; any prior marriages; age, health, skills and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation of marital property; value of each party's separate property; standard of living established during the marriage; economic circumstances of each party; and whether the party will be serving as custodian of any children. *See* 23 Pa.C.S.A. § 3502 (a)(1-11) ["Section 3502(a)"]. The weight these statutory factors are given depends on the facts of each case and is within the court's discretion. *See Mercatell*, 854 A.2d at 611. When determining whether the trial court abused its discretion, this Court must "look at the distribution as a whole, in light of the trial court's overall application of the factors enumerated at Section 3502(a)." *Id*. at 612.

The trial court's opinion below contained specific findings as to each of the factors listed in Section 3502(a). *See* Trial Court Opinion, 12/26/18, at 14-19. The court noted that the parties' marriage of three years and three months was not long but that they had been together for seven years prior to their marriage and had a child together. The court also found the parties to

have great disparity in their earnings and earning capacity, with Husband having an annual income of $752,255 in 2016 and wife having an overall negative income for the same year.

In determining the employability and opportunity for future acquisitions of capital assets and income of each party, the court noted that Wife's health issues significantly affected her prospects. The court found that Husband, in contrast, was clearly in a better position of being able to acquire future income and assets. To that end, the court noted that Husband had a non-marital estate in excess of three million dollars, whereas Wife's non-marital estate consisted only of a $255,000 residence that was a gift from her parents. Following its analysis, the trial court found that a disproportionate distribution, with Wife receiving 55%, was necessary to accomplish economic justice.

Wife now essentially asserts that the trial court should have granted her more than 55% of the marital estate, though she does not identify that percentage. In rejecting this claim below, the trial court first found that it could not "even begin to appropriately address" Wife's issue as she had completely failed to explain how she believed the trial court had erred by awarding her 55%. Trial Court Opinion, 9/3/19, at 26.

Wife's brief to this Court does not fare much better. It appears that Wife is arguing that the trial court did not properly weigh the statutory equitable distribution factors because if it had, according to Wife, it would be clear that a 55%-45% split was not a just division of the marital estate. In particular,

Wife seems to argue that the trial court did not place sufficient emphasis on the parties' disparate economic situations.

Contrary to Wife's claims, as noted above, the trial court clearly considered the parties' different economic realities. In fact, the court specifically stated that both the health, sources of income and employability factor as well as the opportunity for future acquisition of capital assets and income factor "weighed heavily in favor of Wife." Trial Court Opinion, 12/26/18, at 14-16. In the end, the trial court comprehensively went through the statutory factors and based on those factors, fashioned a distribution award that, in its discretion, achieved the most economic justice. Wife has simply not shown that the trial court abused that discretion.

Turning to the valuation of the individual assets, Husband first argues that the trial court did not properly calculate the marital increase in value of his pre-marital ownership interest in Cenova. We are constrained to agree.

At the outset, we are mindful that "the valuation of Husband's business and significant real estate interests ha[s] been rendered extremely challenging" in light of "the inordinate delay in the proceedings." Trial Court Opinion, 12/26/18, at 3. In selecting the date of valuation for purposes of determining the fair market value of a marital asset, the court must choose a date of valuation that best works economic justice between the parties. *See Smith*, 904 A.2d at 18.

Since a business's value may be subject to great fluctuation, the date selected is generally close to the date of distribution rather than the date of separation. **See id**. at 18-19. There are, however, limited circumstances when it is more appropriate to value marital property as of the date of separation. **See id**. at 19 (citations omitted).  In addition, when a party brings separate property into a marriage, only the increase in value of the property during the marriage is considered marital property. **See Mundy v. Mundy**, 151 A.3d 230, 236 (Pa. Super. 2016).

Here, Husband had a 16.67% interest in Cenova at the date of the parties' marriage in 2004. During the marriage, in 2006, Husband's interest in Cenova increased by an additional 33.33% so that by the time of the parties' separation in 2008 and the equitable distribution hearing in 2017, Husband owned 50% of the company.

Both Husband and Wife presented extensive expert testimony on the fair market value of Cenova, including its value at the time of marriage (2004), at the date of separation (2008) and at the time of the equitable distribution hearing (2017 - although these calculations were actually based on Cenova's 2016 financials, the last full year for which Cenova's financials were available). Although both of the experts utilized the same income approach, they arrived at drastically disparate values. Husband's expert valued Cenova at $1,747,000 at the time of marriage, $1,839,000 at the time of separation and $3,152,000 at the time of the hearing. Wife's expert valued Cenova at $1,346,923 at the

time of marriage, $2,730,410 at the time of separation and $7,230,224 at the time of the hearing.

The experts also both assigned differing values to Husband's 16.67% pre-marital ownership interest in Cenova at the time of marriage, at the time of separation and at the time of the hearing. Husband's expert valued Husband's 16.67% ownership interest at $197,918 as of the date of marriage, $208,420 as of the date of separation and $357,598 as of the date of the hearing. *See* Business Valuation Report of Steven Juska, 4/28/17, at 20; N.T. Hearing on Exceptions to Equitable Distribution Report, 12/6/17, at 68-69. Wife's expert, meanwhile, valued the 16.67% ownership interest at $224,532 as of the date of marriage, $327,715 as of the date of separation and $867,800 as of the date of the hearing. *See* Business Valuation Report of David Glusman, 5/16/17, at 2.

Both experts also assigned a different business valuation discount for the minority interest and lack of marketability. *See* Trial Court Opinion, 12/26/18, at 6 (explaining that when determining the value of a business, it is "appropriate to discount the value of a business for the lack of control that a minority owner has over the company (minority interest) and for marketability (the timing with which an interest in the business could be sold)"). Husband's expert assigned a 35% valuation discount whereas Wife's expert assigned a 28% valuation discount.

In the end, the trial court accepted the overall equity value of Cenova to be $3,152,000 - the value as of the date of the hearing offered by Husband's expert - and accepted the 28% valuation discount advanced by Wife's expert. To reach the final marital value of Husband's ownership interest in Cenova, the court first reduced the $3,152,000 value by 50% to arrive at Husband's 50% ownership interest of $1,576,000. It then deducted the valuation discount of 28%, or the equivalent of $441,280. Lastly, the court subtracted the value of Husband's 16.67% pre-marital ownership interest at the time of marriage that Husband's expert had offered ($197, 918). For clarity, the court provided the following calculation in its opinion:

| $3,152,000 | 100% Equity Value |
| ÷   2 | |
| | |
| $1,576,000 | 50% ownership |
| | |
| -  441,280 | Valuation discount of 28% |
| -  197,918 | Value of Husband's pre-marital interest |
| | |
| $936,802 | Value of Husband's interest as of 12/31/16 |

**See** Trial Court Opinion, 9/3/19, at 43. Accordingly, the court determined the marital value of Husband's ownership interest in Cenova to be $936,802.

Husband does not dispute that the trial court was free to use the $3,152,000 figure to ascertain the value of the 33% interest he obtained in Cenova during the marriage. Husband's issue with the court's calculation stems from the way in which the court treated his 16.67% pre-marital

ownership interest in Cenova. The parties agree that Husband acquired this interest prior to marriage, and that it is therefore not marital property. As such, only the increase in value of the 16.67% interest during the marriage is marital property. **See Mundy**, 151 A.3d at 236. The Divorce Code specifically addresses how to measure and determine the increase in value of non-marital property:

> The increase in value of any nonmarital property … shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, *whichever date results in a lesser increase*.

23 Pa.C.S.A. § 3501(a.1) (emphasis added).

Relying on Section 3501 (a.1), Husband argues that by "utilizing only the value of Cenova as of December 31, 2016, and applying that value to Husband's entire [50 percent] ownership interest, including the 16.6[7] percent pre-marital ownership interest, [the court improperly] failed to make a determination as to the date of separation value of Husband's pre-marital ownership interest in Cenova." Husband's Brief at 33. We agree.

As Husband points out, the language of Section 3501(a.1) clearly required the trial court to determine both the increase of the value of Husband's 16.67 % interest in Cenova from the date of the marriage to the date of separation as well as the increase of its value from the date of marriage to the date of the hearing. The court was then required, pursuant to Section 3501(a.1), to select the lesser figure from those determinations and use that

figure in its calculation of the marital estate. The court did not do this here and we agree with Husband that, under Section 3501 (a.1), it was error for it not to do so.

While not cited by Husband, we note that this Court's case law supports this conclusion. In **Biese v. Biese**, 979 A.2d 892 (Pa. Super. 2009), the husband owned the marital residence prior to the marriage and it was therefore deemed to be non-marital property. In determining the increase in value of the marital residence for purposes of equitable distribution, the trial court used the value of the marital residence at the time of separation and not its lesser value at the time of the equitable distribution hearing before the Master. This Court held the trial court erred by doing so and stated:

> The statutory language [of Section 3501(a.1)] cannot be read as intending anything other than the lesser of the valuations at separation vis-à-vis the time of the Master's hearing be used when establishing the increase in value of the non-marital property.

**Id.** at 899.

In rejecting Husband's claim below, the trial court indicated that it had not committed any error because it had deducted the value of Husband's pre-marital interest ($197,928) from the total marital value of Cenova. However, the value of the pre-marital interest used by the court was what Husband's expert had estimated Husband's 16.67% interest was worth as of the date of the marriage and it therefore did not in any way address the requirement imposed by Section 3501(a.1). The value of Husband's pre-marital ownership interest at the date of the marriage will have to be deducted from any

calculation of the marital value of Husband's total ownership interest, regardless of what the increase in value of Husband's 16.67% pre-marital ownership interest during the marriage is determined to be.

Based on all of the above, we are compelled to remand to the trial court to calculate the increase of value of Husband's pre-marital 16.67% ownership interest in accordance with the dictates of Section 3501(a.1). We acknowledge that doing so only extends the life of a prolonged litigation that has already expended so many resources, including those of the court. We also acknowledge that this recalculation may ultimately have the effect of significantly altering the total value of the marital estate.[4] As such, we recognize that the trial court, in its discretion, may determine that the new calculation of the marital estate requires it to revise the equitable distribution award as a whole, including the percentage of the marital estate to which each party is entitled.

Next, Husband maintains that the trial court abused its discretion by including the property at Black Walnut Lane, the parties' former marital residence, in the marital estate. Specifically, Husband contends it was error

_____

[4] By way of example, Husband calculated the increase in value of the 16.67% ownership interest using his expert's valuation of Cenova at the time of the hearing and calculated it to have a $180,171 increase in value. He then did the same calculation but used his expert's valuation of Cenova at the date of separation and calculated the 16.67% ownership interest to have only a $22,674 increase in value. *See* Husband's Brief at 35-36. The trial court, of course, is free to exercise its reasonable discretion in determining the appropriate values to use to calculate the increase in value of the 16.67% interest.

to include the property in the marital estate because it was purchased prior to the marriage and was titled in Husband's name alone. This claim fails.

In rejecting this claim below, the trial court explained:

> By testimony borne out at trial, both parties agreed that they acquired property prior to the marriage, located at [] North Warner Lane, which was jointly owned property (albeit purchased prior to marriage). The parties then jointly refinanced the North Warner Lane property in 2002 for $170,000, which was then used toward the acquisition and construction of the marital residence at [] Black Walnut Lane. In 2003, the North Warner Lane property was sold and produced $100,000 in proceeds which were likewise used toward the marital residence.
>
> Despite the acquisition date and the titling of the property in Husband's name, equity mandated that Wife receive consideration of a portion of the value of this asset *via* equitable distribution, as Wife credibly testified that she transferred her interest in the North Warner Lane property/proceeds toward the acquisition of the [] Black Walnut Lane property with the expectation that it would be their 'joint' residence (along with their minor child).
>
> The Court weighed all the equitable arguments from both parties and assigned a value of $270,000 (representing the amounts paid for the acquisition of the property from the equity/proceeds of their jointly owned Warner Road residence) in the marital estate.

Trial Court Opinion, 9/3/19, at 44-45.

We agree with Wife that, in essence, the trial court found that "equity required the parties to be entitled to a portion of the joint funds used to purchase and construct [the Black Walnut Lane] property prior to marriage."

Wife's Brief at 20. We also agree with Wife that the trial court did not abuse its discretion by doing so under the circumstances of this case.

Wife also raises her own issue relating to the trial court's valuation of the Black Walnut Lane property, which seems perplexing in light of her previous position stated above. Wife asserts, with little explanation, that the trial court erred by not including the reduction of the mortgage principal paid down during the marriage as an increase in value of the Black Walnut Lane property. We agree with the trial court that Wife has waived this claim.

The trial court found that Wife did not raise this issue until her post-trial findings of fact/brief, and then did so only in the vaguest of ways.[5] The trial court also found that Wife did not offer any testimony or evidence about the mortgage payments.

Wife argues in her appellate brief to this Court that the evidence regarding the mortgage payments was in the record because Husband had submitted the mortgage statements showing a reduction in the balance of the mortgage as exhibits. However, Wife does not direct this Court to any place in the record where she raised a sufficiently developed argument that, based on those documents that Husband submitted as exhibits, the reduction of the mortgage should have been included as an increase of value in the Black Walnut Lane Property. We agree with the trial court that Wife did not properly

_____

[5] Wife's findings of fact/brief merely references the mortgage reduction in its conclusive paragraph on the Black Walnut Lane Property Section, which makes an alternative claim regarding the minimal marital value of the property. *See* Wife's Findings of Fact/Brief, 3/29/18, at 8.

raise this issue and it is therefore, waived. **See Commonwealth v. Love**, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments which are not sufficiently developed are waived).

Husband argues next that the trial court erred by finding that the 50% ownership interest he acquired in certain properties from a lawsuit filed during the marriage was not excludable as marital property pursuant to 23 Pa. C.S.A. § 3501(a)(1). This claim also fails.

Section 3501(b) of the Divorce Code provides that "all real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether the title is held individually or by the parties in some form of co-ownership." 23 Pa.C.S.A. § 3501(b). However, Section 3501(b) also provides that this presumption can be overcome by a showing that the property was acquired by a method listed in subsection (a) of the Code. One of those methods is found at Section 3501(a)(1), which states that marital property excludes any "property acquired in exchange for property acquired prior to the marriage." **Id**. at § 3501(a)(1).

Husband argues this exclusion applies to the interest in properties he obtained as part of a lawsuit. By way of background, at the time of his marriage, Husband owned a 50% interest in certain rental properties with his former business partner, Robert Perry. Husband testified at the hearing that in 2006, he discovered that Perry had sold several of those jointly owned properties without Husband's knowledge and pocketed the proceeds from

those unauthorized sales. In response, Husband filed a lawsuit against Perry in July of 2006, while he was still married to Wife.

The parties reached a settlement agreement in the matter in 2007, again, while Husband was still married to Wife. As part of that agreement, Husband acquired Perry's 50% ownership interest in seven of their jointly owned properties that Perry had not sold, which made Husband the 100% owner of those properties ("Perry Litigation Properties").[6] The trial court classified the additional 50% interest that Husband had acquired in each of these Perry Litigation Properties as marital property because Husband had obtained that interest as part of a settlement reached in a lawsuit filed during the marriage.

In his brief to this Court, Husband acknowledges that these circumstances create a presumption that the additional 50% interest in each of the Perry Litigation Properties is marital property. **See** Husband's Brief at 44. Husband maintains, however, that this interest constitutes property acquired in exchange for property acquired prior to marriage and is therefore non-marital property under Section 3501(a)(1). Specifically, Husband argues that this exception is applicable here because he released his pre-marital ownership interest in the properties Perry had sold without his knowledge in

---

[6] The trial court identified those properties as: 113 Osborne Street, 1221 Markley Street, 425-427 Markley Street, 440 E. Marshall Street, 714 Astor Street, 826 and 922 W. Main Street. With the exception of the Osborne Street property, which is in Philadelphia, the properties are in Norristown.

exchange for the additional 50% ownership interest in the Perry Litigation Properties. We do not agree.

We first note that Husband could not have released or exchanged his ownership interest in the properties Perry had sold because that interest ceased to exist once Perry sold those properties. This was, of course, the basis for Husband's lawsuit. As Wife argues, and the trial court found, it was only because Husband filed this lawsuit in an effort to recoup his losses that he was able to obtain the additional 50% ownership interest in the Perry Litigation Properties.[7] He simply did not obtain that interest as the result of an exchange within the meaning of Section 3501(a)(1). **See** Trial Court Opinion, 9/3/19, at 50 ("The fact that Husband initiated a lawsuit against Mr. Perry which resulted in Mr. Perry's relinquishment of his interest in real property strongly supports the Court's finding that the Properties were not, as Husband claims, acquired in exchange for property acquired prior to the marriage.").

Moreover, as Wife notes, Husband's argument that the settlement was a clean exchange of his *pre-marital* interest in one set of properties for the interest in another set does not account for the fact that Husband agreed to pay Perry $100,000 as part of the settlement. **See** So-Ordered Stipulation and Agreement of Settlement, 12/18/07, at 6. Wife also asserts that Husband's argument is further muddied by the fact that the properties Perry sold were

---

[7] In fact, Husband testified that he only settled for the additional 50% interest in the Perry Litigation Properties because Perry did not "have any money" and "you can't get blood from a stone." N.T. Hearing on Exceptions to Equitable Distribution Report, 12/11/17, at 95.

rental properties and any rental income from those properties, along with any increase in value of Husband's pre-marital interest in the Perry Litigation Properties, during the marriage was marital property. In any event, as the trial court stated:

> The fact remains that Husband accrued a cause of action against Mr. Perry, during the marriage, over the mishandling of several investment Properties. This ultimately resulted in a settlement, also during the marriage, with Mr. Perry paying Husband in the form of signing over his interest in the Perry Litigation Properties.

Trial Court Opinion, 9/3/19, at 48.

Therefore, the trial court found that the additional 50% interest was marital property and Husband had not overcome the presumption that the interest was marital property by establishing that he had acquired it by way of an exchange as contemplated by Section 3501(a)(1). We see no abuse of discretion in this determination. We also point out that, for equity purposes, the trial court deducted Husband's post-separation payment of legal fees and transfer taxes necessitated by the litigation from the overall value of the Perry Litigation Properties. No relief is due on this claim.

Wife raises the final two issues regarding the trial court's equitable distribution award. She first claims that the trial court abused its discretion by denying her motion *in limine* seeking to preclude Husband from offering any evidence at the equitable distribution hearing to support his claim that certain properties were not marital property. Wife essentially contends that previous

orders entered by Judge Garrett Page and Judge Thomas Delricci precluded Husband from offering this evidence as a sanction for his failure to comply with Wife's discovery requests. This claim warrants no relief.

As a threshold matter, we agree with the trial court that Wife has failed to sufficiently develop her claim on multiple levels. Wife baldly announces that the "Rule of Coordinate Jurisdiction undoubtedly applies to this issue," and appears to argue that this is so because the trial court's denial of her motion *in limine* was in "direct contradiction to numerous court orders previously entered in this matter." Wife's Brief at 47. However, just as she failed to do below, Wife does not identify those orders in her brief to this Court. Instead, Wife refers this Court generally to her entire brief regarding her motion *in limine*. That brief, in turn, does little to clarify Wife's claim. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [the appellant's] claim." ***Krauss v. Trane U.S. Inc.,*** 104 A.3d 556, 584 (Pa. Super. 2014). This is especially true when the record is as voluminous as the one in the instant case.

Moreover, while Wife's motion *in limine* brief does quote from the October 22, 2013, March 21, 2014, and July 31, 2014 sanction/discovery orders issued by Judge Page, which certainly contain preclusion sanctions, the trial court found that those orders failed to specify with any clarity which

particular assets were the subject of the preclusion.[8] As the trial court observed, there was no "one, comprehensive Order that indicated what, in fact, was to be 'precluded'." Trial Court Opinion, 9/3/19, at 32. The court therefore found that it simply could not parse out exactly which assets Wife believed Husband should have been precluded from arguing were non-marital. *See* Trial Court Opinion, 9/3/19, at 32 ("Wife took the 'kitchen sink' approach by arguing that Husband should be precluded from introducing *any and all* evidence or testimony regarding the equitable distribution matter.").

Wife contends in her brief to this Court that she provided a list of 19 rental properties Husband bought post-separation and a list of eight bank accounts in her motion *in limine* brief. She argues Husband should have been precluded from arguing those assets were not marital property. However, Wife makes no argument at all regarding the bank accounts, and her argument regarding the 19 properties purchased by Husband post-separation is sparse at best. *See Love*, 896 A.2d at 1287 (stating that arguments which are not sufficiently developed are waived).

_____

[8] The October 22, 2013 order stated that the court would "enter an order precluding [Husband] from introducing any evidence or testimony, whether in support of his position or against [Wife's] position … related to the economic issues" if Husband failed to comply with the discovery directives in that order. Trial Court Order, 10/22/13, at 7. Similar to the March 21, 2014 order, the July 31, 2014 order provided that Husband was to be "sanctioned by preclusion from introducing any evidence or testimony, either in support of his position or against [Wife's] position as to all discovery documents previously ordered, and which have not been produced by the time limits herein stated." Trial Court Order, 7/31/14, at 5.

In any event, the court below found that Judge Arthur Tilson, the judge assigned to the case after Judge Page, indicated in a discovery hearing that Husband had provided sufficient information on the acquisition of these 19 properties. *See* N.T. Wife's Exceptions/Discovery Issues Hearing, 6/29/16, at 76-81. Then, in an order issued the same day as that hearing, Judge Tilson denied Wife's request for any additional information as to the source of the funds used to purchase those properties. *See* Trial Court Order, 6/29/16, at 1. In light of all of the above, Wife has simply not established that the trial court abused its discretion in denying her motion *in limine*. ***See Commonwealth v. Noll***, 662 A.2d 1123, 1125 (Pa. Super. 1995) (stating that the ruling on a motion *in limine*, like all evidentiary rulings, is committed to the sound discretion of the trial court).

In the final issue regarding the equitable distribution award, Wife argues that the trial court abused its discretion by not including the real properties at DeKalb Street and Green Street, both in Norristown, and Krams Street in Philadelphia as well as "Husband's business bank accounts" as marital property for purposes of equitable distribution. We are in full agreement with the trial court that Wife has also waived this issue.

In finding this issue waived below, the trial court first noted that the only document related to the above-listed properties introduced at the hearing was a copy of the deed to Krams Street, which was dated after the parties' separation. Other than that deed, "there were no Exhibits entered of record for any of the within properties and a review of the record reflects that there

was no testimony elicited on these properties throughout the three day protracted Hearing." Trial Court Opinion, 9/3/19, at 40.

Wife argues, however, that she presented evidence of these properties in her "post-hearing filings." In support of this assertion, Wife generally cites to the entirety of her post-hearing findings of fact/brief. She does not pinpoint any specific part of that brief where she refers to these properties, their value or any exhibits supporting that value, much less to where she referred to those properties during the hearing. The only place Wife mentions the properties, as the trial court noted, is in her post-hearing side-by-side summary of properties. In that summary, Wife presumptively lists the properties as marital and assigns a proposed value to them without any support, documentation or reference to the record whatsoever. This claim is waived. *See Love*, 896 A.2d at 1287.

Wife's claim that the trial court should have included "Husband's business bank accounts" as marital property is also waived. Her entire claim regarding the bank accounts is as follows:

> During the hearing before the Trial Court, Wife introduced numerous bank statements, which Husband stated belonged to his businesses, Brown Street Investments, HLS Investments, and Allegheny Property Investments, which were all started during the marriage (R. 1358a-1369a; 1402a). Husband did not provide any evidence or testimony to overcome the presumption that these accounts are marital property. Therefore, there is no question that the Trial Court committed an error of law when it failed to include any and all bank accounts, introduced at the

- 26 -

hearing, that belonged to Husband's businesses during the marriage as marital property.

Wife's Brief at 78.

This argument clearly suffers from the same defects as the one Wife presented to the trial court. As the trial court stated, "since Wife does not even put forth one specific account or an amount for the Court's consideration on [this] issue, the Court is without the slightest direction to even speculate as to which accounts or amounts Wife takes issue with their exclusion." Trial Court Opinion, 9/3/19, at 41. Wife likewise fails to direct this Court in any meaningful way, and her claim is therefore, waived. **See Kraus**, 104 A.3d at 584 (stating that it is not this Court's responsibility to comb through the record to find the factual underpinnings supporting a claim).

We now turn to the parties' claims regarding Wife's award of APL. We note at the outset that "[t]he parties have litigated over everything including …APL/Spousal Support since 2008." Trial Court Opinion, 12/26/18, at 19. As such, even an abbreviated history of the APL award in this case becomes involved.

Wife has received APL since April of 2008. On September 2, 2014, Husband filed a motion to terminate spousal support. Eight days later, on September 10, 2014, Wife filed a petition to increase APL, seeking a retroactive increase in APL on the basis that Husband had failed to inform her of his increase in income beginning in 2010 ("petition to retroactively increase APL"). Following a hearing, Judge Tilson granted Husband's motion and terminated "spousal support" in an order dated February 25, 2016. The order

did so on the basis that the "parties were only married for approximately 4 years and 4 months" with Wife receiving "spousal support for approximately four times that amount of time." Trial Court Order, 2/25/16, at 1.[9] The order also denied Wife's petition to retroactively increase APL.

In turn, Wife filed a complaint for APL on July 13, 2016. Husband eventually filed a motion for summary judgment on that complaint. The trial court below denied Husband's motion for summary judgment but granted Wife's request to reinstate her APL in an order dated August 11, 2017. In that order, the trial court directed Domestic Relations to schedule proceedings to determine the amount of Wife's APL but reserved the right to make any credits or adjustments to the APL amount in its final award. **See** Trial Court Order, 8/11/17, at 3-4.

Following those proceedings, the Support Master issued a recommended report regarding Wife's APL on November 6, 2017. The report reinstated Wife's APL retroactively to July 13, 2016, the date Wife filed her complaint for APL. For purposes of calculating the amount of APL, Wife's counsel, in an effort to avoid any potential issues at equitable distribution, asked the Support Master to rely on a monthly income for Husband that was lower than the net monthly

---

[9] As Wife points out, the parties were actually only married for three years and three months and Wife had at that point received APL for closer to eight years, and not 17 years as the order indicated.

income of $53,731 reflected in Husband's 2016 tax return.[10] The Master's report therefore based its calculations for APL on a net monthly income of $15,506.10 for Husband and a net monthly income of $1,174.17 for Wife, and recommended that Wife receive APL in the amount of $5,072.89 from July 13, 2016 to September 14, 2017 and in the amount of $5,750.28 from September 15, 2017 onward.[11] The report also stated that "allocation for all other income .... is reserved for equitable distribution." Findings of Fact, 11/6/17, at 2. Both parties filed exceptions to the report and those exceptions were consolidated with those filed by Wife in the equitable distribution matter.

Following the three-day hearing on those exceptions, the court issued its December 16, 2018 order directing Husband to pay increased APL payments to Wife retroactively to the date she filed her APL complaint. Based on Husband's actual 2016 income, which was $53,731 per month, the court set the APL at the amount of $19,515 per month for the July 13, 2016 - September 14, 2017 period and at the amount of $21,023 per month effective

---

[10] This information is in the notes of testimony from the Support Master's Hearing on October 6, 2017, which Husband has included in the reproduced record. It does not appear that the notes of testimony from this hearing are in the certified record. However, there is no challenge to this information and the Master's report, which is part of the certified record, specifically notes that "Wife asked that not all of Husband's income as shown on his 2016 tax return be included as part of his net income available for support." Findings of Fact, 11/6/17, at 2.

[11] Again, the difference in the amount of APL during the two periods is due to the fact that Husband had physical custody of his and Wife's child and was entitled to a child support offset until September 14, 2017, when the child turned 18.

September 15, 2017 through the date of the December 16, 2018 order. Both Husband and Wife now appeal varying aspects of the court's APL order. Wife also appeals the February 25, 2016 order terminating APL and Husband appeals the August 11, 2017 order reinstating APL.

APL is an order for temporary support of a spouse during the pendency of divorce proceedings. *See* 23 Pa.C.S.A. § 3103. APL is "based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *DeMasi v. DeMasi*, 597 A.2d 101, 104 (Pa. Super. 1991). "APL focuses on the ability of the individual who receives the APL during the course of litigation to defend her/himself, and the only issue is whether the amount is reasonable for that purpose, which turns on the economic resources available to the spouse." *Id*. at 105.

APL is also "designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." *Litmans v. Litmans*, 673 A.2d 382, 389 (Pa. Super. 1996) (citation omitted). Therefore, in calculating the amount of APL, the court should consider the ability of the other party to pay, the separate estate and income of the applicant and the character, situation and surroundings of the parties. *See id*. The amount awarded is within the sound discretion of the trial court. *See id.* at 388.

APL is based on the state of the litigation. *See DeMasi*, 597 A.2d at 104. As such, APL typically proceeds through the course of the litigation and

- 30 -

ends at the award of the divorce decree, which is also the point when equitable distribution has been determined. ***See id***. However, APL will generally continue throughout the appeal process on matters of equitable distribution and any remand until a final order has been entered. ***See id***.

Wife first argues that Judge Tilson's February 25, 2016 order erroneously denied her petition to retroactively increase APL and erroneously terminated "spousal support," even though only an order for APL was in effect. This claim warrants no relief. [12]

As Wife notes, the trial court did not specifically address the retroactivity issue in its September 3, 2019 opinion. However, the court did address it in its December 26, 2018 opinion in support of its equitable distribution and APL order entered on that same date. In that opinion, the trial court acknowledged Wife's argument in her petition to retroactively increase APL that she was entitled to an increase in APL retroactive to 2010 when unbeknownst to her, Husband's income had increased. The court noted, however, that Judge Tilson's February 25, 2016 order had specifically denied Wife's petition to retroactively increase APL.

The court then found that it was precluded from disturbing Judge Tilson's ruling denying Wife's petition to retroactively increase APL by the

---

[12] Wife also summarily asserts that the February 25, 2016 order unjustly denied her petition to increase APL - prospectively from the date of her petition - but she does not sufficiently develop her argument. This claim is waived. ***See Love***, 896 A.2d at 1287 (stating that claim is waived if it is not sufficiently developed).

coordinate jurisdiction rule, which prohibits judges of coordinate jurisdiction from overruling each other's decisions in the same case. *See Ryan v. Berman*, 813 A.2d 792, 795 (Pa. 2002). The trial court recognized that it could depart from the rule only in exceptional circumstances, such as when the prior ruling was clearly erroneous and would create a manifest injustice if followed. *Id.*[13] Finding that neither was true regarding Judge Tilson's ruling denying Wife's petition to retroactively increase APL, the court below concluded that the coordinate jurisdiction rule barred it from making any changes to Wife's APL retroactive to 2010.

Wife does not address the trial court's decision on the coordinate jurisdiction rule. She does essentially argue, however, that Judge Tilson's order regarding his denial of her petition to retroactively increase APL was clearly erroneous. Specifically, Wife claims her APL order should have been modified retroactively pursuant to 23 Pa. C.S.A. § 4352(e). We disagree.

Section 4352(e) of the Divorce Code governs the retroactive modification of support orders and states that retroactive modification of a support order is to date back only to the date of a pending petition for modification. However, Section 4352(e) also provides an exception to this rule, namely that:

---

[13] Although not mentioned by the trial court, departure from the coordinate jurisdiction rule is also allowed when there has been an intervening change in the controlling law or a substantial change in the facts or evidence giving rise to the dispute in the matter. *Id*. There is no argument that these circumstances are present here.

- 32 -

> Modification may be applied to an earlier period if the petitioner was precluded from filing a petition for modification by reason of a … misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition.

*Id*.

Wife argues that this section applies here because Husband did not timely notify her or Domestic Relations, as he was required to do, of his significant increases in income from 2010 forward. While Wife acknowledges that Husband did produce his 2010 and 2011 personal tax returns as part of five binders of discovery he delivered to Wife's counsel on December 6, 2013, Wife's counsel did not discover those tax returns until July of 2014. Wife subsequently filed her petition to retroactively increase APL on September 10, 2014.

Based on this timeline, Judge Tilson found that Wife had not filed her petition to retroactively increase APL promptly, as the statute requires. We see no error in Judge Tilson's determination, especially in light of the fact that the determination of whether a modification petition has been filed promptly turns on the facts and circumstances of each case. *See Krebs v. Krebs*, 944 A.2d 768, 775 (Pa. Super. 2008).

Therefore, Wife has not established that Judge Tilson's denial of her petition to retroactively increase APL was clearly erroneous. As such, we would find Wife was not entitled to any relief even if she had challenged the trial court's conclusion that the coordinate jurisdiction rule barred it from disturbing Judge Tilson's denial of her petition to retroactively increase APL.

The trial court, however, arrived at a different conclusion when considering whether Judge Tilson erred by terminating Wife's APL *completely*.[14] In maintaining that it had properly reinstated Wife's APL in its August 11, 2017 order after Judge Tilson had terminated it, the court explained:

> [T]he Court notes that the litigation in this matter has been significant and ongoing, with seven hundred, forty-six (746) docket entries as of the date of this Opinion. By the time that support was terminated in February 2016, the actual equitable distribution proceedings were just getting underway, with numerous experts and numerous days of hearings anticipated. As such, the Court properly exercised its authority to reinstate APL for Wife going forward due to a clear need for sufficient funds to continue to litigate the matter, as the purpose of [APL] is based on the need of one party to have equal financial resources to pursue the divorce proceedings, when, in theory, the other party has major assets which are the financial sinews of domestic warfare. … Husband clearly holds the upper hand financially in the matter.
>
> …
>
> As such, the undersigned entered the August 11, 2017 Order which directed the payment of APL notwithstanding the fact that spousal support was otherwise terminated during the pendency of the divorce proceedings.

---

[14] We recognize that Judge Tilson's February 25, 2016 order terminated "spousal support" when Wife was actually receiving APL. The trial court noted that this prompted the parties to engage in a "maelstrom focused primarily on semantics: whether the February 25, 2016 order terminated "APL" or "spousal support." Trial Court Opinion, 9/3/19, at 35. The parties continue to argue about this issue in their briefs to this Court. However, it is clear that Judge Tilson's order was directing the termination of APL, as that was the only (non-child) support order in effect at the time.

Trial Court Opinion, 9/3/19, at 36 (footnote omitted).

Husband argues that the coordinate jurisdiction rule - just as it had with Judge Tilson's ruling regarding Wife's petition to retroactively increase APL – barred the trial court from entering an order reinstating Wife's APL after Judge Tilson had terminated it. The trial court disagreed. The court stated that it was mindful of the purpose of the coordinate jurisdiction rule and once again recognized that a departure from the rule is allowed only in such exceptional circumstances as where the prior ruling was clearly erroneous and would create a manifest injustice. In finding those circumstances present here, the court stated:

> As mentioned [above], there is a huge discrepancy in the parties' resources and income, largely in Husband's favor. Despite this and the fact that the parties were still in the midst of a contentious equitable distribution battle, Judge Tilson's February 25, 2016 Order terminated spousal support for Wife.

*Id*. at 52. The court then went on to say that "to deny Wife the ability to continue to receive APL during the pendency of the divorce proceedings (and prior to receiving any assets *via* equitable distribution), would be clearly inequitable." *Id*.

Husband makes much of the fact that the court did not use the words "clearly erroneous" and "manifest injustice" in its reasoning. We do not agree that the court's choice of words negates its clear conclusion that the circumstances in the instant case warranted a departure from the coordinate

jurisdiction rule and that it had therefore properly reinstated Wife's APL during the litigation. We see no abuse of discretion in the court's determination and therefore, no relief is due.[15]

Husband raises the final two claims regarding APL. He first maintains that, because this case meets the definition for a high-income APL case, the court was required to conduct an analysis regarding Wife's reasonable needs before assigning a final APL amount. In support of his claim, Husband relies on **Hanrahan v. Bakker**, 186 A.3d 958 (Pa. 2018), which held that the finder-of-fact must conduct a reasonable needs analysis in child support cases that are considered high-income pursuant to the high-income support guidelines. This claim fails.

As a threshold issue, Wife argues that Husband has waived this claim as he never requested a deviation from the guidelines or asked the trial court at any point to conduct a reasonable needs analysis. Husband counters that he did not waive his claim because he could not have raised the issue regarding a reasonable needs analysis at any time before this appeal. According to Husband, the issue did not become relevant until the trial court *sua sponte* attributed a monthly income of $53,731 to Husband in its December 26, 2018

---

[15] In her cross-appeal, Wife essentially argues that the February 25, 2016 order improperly terminated her APL because that termination was based solely on the court's consideration of the length of the receipt of her APL as compared to the length of the marriage. Wife's argument, in the first instance, is not well developed. In any event, there is no need to address the merits of Wife's claim in light of our conclusion that the trial court did not abuse its discretion in reinstating Wife's APL on the basis that the February 25, 2016 order had improperly terminated it.

order, turning his case into a high-income one as defined by the high-income support guidelines. *See* Pa.R.C.P. 1910.16-3.1(b) (defining a high-income APL case as one where the parties' combined monthly income is in excess of $30,000).

Husband, however, was undoubtedly aware that his 2016 tax return showed a monthly income of $53,731. While it is true that the Support Master did not assign that full amount to Husband, Husband was also aware that the Master's report stated that allocation of other income had been reserved for equitable distribution and that the trial court had specifically reserved the right to make changes to the final APL award. Indeed, Husband "acknowledges that [the trial court] did have the power, *sua sponte* to conduct [its] own income calculations." Husband's Reply Brief at 44. Under these circumstances, it was incumbent upon Husband to notify the trial court that it was his position that the trial court must conduct a reasonable needs analysis before calculating APL using any monthly amount in the high-income range.

This is especially true because the Supreme Court has specifically instructed finders-of-fact not to conduct a reasonable needs analysis in APL cases. As Husband acknowledges, our Supreme Court held in *Mascaro v. Mascaro*, 803 A.2d 1186, 1195 (Pa. 2002), that the reasonable needs of a spouse are not a proper consideration in APL cases. Husband points out, however, that *Mascaro* was decided prior to the adoption of the high-income support guidelines at Rule 1910.16-3.1, a fact the *Hanrahan* Court acknowledged in a footnote. *See Hanrahan*, 186 A.3d at 975 n.24. Husband

maintains that this acknowledgment in the footnote signifies the Supreme Court's intent to have all high-income cases covered by the high-income support guidelines, including APL, be subject to a reasonable needs analysis. We do not agree.

The footnote in **Hanrahan** merely served to distinguish that case, which involved child support, from **Mascaro**, which involved APL. It is clear from even a quick reading of **Hanrahan** that the focus of the **Hanrahan** Court was solely on child support in high-income cases. In particular, when analyzing whether a reasonable needs analysis was necessary in high-income child support cases, the Court first looked to the Income Shares Model, which forms the basis for Pennsylvania's child support guidelines and schedules. The Court explained that the Income Shares Model is based on economic studies that ensure that the standard child support award is actually "tied to the reasonable needs of children living in standard income households." **Hanrahan**, 186 A.3d at 973. The Court then noted that the same economic data is not available for high-income child support cases and found that it was thereby necessary for courts to conduct its own discrete analysis of the reasonable needs of a child in those cases. **See id**. At 976.

The footnote in **Hanrahan** made clear that "the Income Shares Model relates only to child support and bears no relation to the APL/spousal support guidelines." **Id**. at 975 n.24, *citing* **Mascaro**, 803 A.2d at 1193 (stating that the Income Shares Model is not relevant to the APL/spousal support guidelines). Therefore, the rationale behind **Hanrahan**'s holding is inapposite

to APL cases. Based on these circumstances, we do not agree with Husband that the footnote in **Hanrahan** had the effect of overruling **Mascaro**, which plainly held that "[w]hile the reasonable needs of a child are paramount in a high-income child support matter, the reasonable needs of a spouse are not a proper consideration when calculating spousal support or APL." **Mascaro**, 803 A.2d at 1195. Accordingly, even if Husband properly preserved his claim, it would offer him no basis for relief under **Mascaro**.

In the final claim regarding APL, Husband essentially argues that the trial court abused its discretion by awarding Wife an amount of APL that did not reasonably relate to her ability to defend herself during the divorce litigation. This final claim fails.

In support of his claim, Husband notes that the trial court found that "APL is not based on the applicant's reasonable needs [but] … 'focuses on the ability of the individual who receives APL during the course of litigation to defend herself.'" Husband"s Brief at 64-65, *quoting* Trial Court Opinion, 9/3/19, at 54-55. With that purpose in mind, Husband argues that the trial court's award of APL to Wife in the amount of $19,515/$21,023 was unreasonable given that he had already paid "virtually 100% of Wife's counsel fees." Husband's Brief at 67. In making this argument, Husband points to payments he had already made to Wife's counsel, including the "$395,000 payment of attorney fees required by Judge Page's order of July 31, 2014." **Id**. at 66.

Wife argues, without further explanation, that this $395,000 was not payment for counsel fees but rather was awarded to her as a sanction for Husband's ongoing failure to comply with Wife's discovery requests. This argument does not account for the fact that the trial court found, albeit for purposes of what Husband owed in counsel fees and not in the context of his argument here regarding APL, that the $395,000 Husband paid as sanctions for his non-compliance was available for Wife to use for counsel fees. *See* Trial Court Opinion, 12/26/18, at 25 ("While the sanctions payment was related to non-compliance with discovery, and was in addition to the payment of counsel fees at the time, the amount was available to Wife to apply towards" counsel fees.). Wife does not address, much less challenge, the trial court's ruling in this regard and we therefore cannot disturb it. However, we would note that we find it a bit disingenuous for Husband to argue that the money he paid as a penalty for his repeated refusal to comply with discovery orders should now benefit him by reducing the amount of APL he owes to Wife to litigate the matter his chronic non-compliance only served to prolong.

In any event, as even Husband recognizes, the amount of APL is not simply based on attorney fees. Rather, it is meant to put the parties on equal footing during the litigation and in doing so, the court is to consider the ability of the other party to pay, the separate estate and income of the applicant and the character, situation and surroundings of the parties. *See Litmans*, 673 A.2d at 389. Based on these factors, the purpose behind APL, and the circumstances of this case, we see no abuse of discretion in the trial court's

award of APL to Wife. **_See id_**. at 388 (stating that the determination regarding the amount of APL to be awarded is within the sound discretion of the trial court).

In sum, then, as for the trial court's December 26, 2018 order regarding equitable distribution, we affirm all but the aspect of that order which involved the calculation of the marital value of Husband's ownership interest in Cenova. As to that aspect, we remand to the trial court to calculate the increase of value in Husband's 16.67% pre-marital ownership interest in Cenova, and fashion a corresponding equitable distribution award, in accordance with this opinion. In regards to APL, we affirm the December 26, 2018 order insofar as it granted Wife's exceptions to APL and denied Husband's exceptions to APL. We affirm the February 25, 2016 order, except to the extent that it terminated Wife's APL. We affirm the trial court's August 11, 2017 order reinstating APL. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/20