J-A25005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KIMBERLY A. SEUL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES A. SEUL | : | No. 729 EDA 2025 |

Appeal from the Decree Entered February 28, 2025
In the Court of Common Pleas of Pike County Civil Division at No(s):
2016-01264

BEFORE:    LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, PJ:                **FILED DECEMBER 30, 2025**

Kimberly A. Seul (Wife) appeals from the final divorce decree entered in the Court of Common Pleas of Pike County. After careful review, we reverse and remand.

Wife and James A. Seul (Husband) were married in September 1995; one child, a daughter, was born of the marriage.[1] The parties separated on September 11, 2016.[2] **See** N.T. Master's Hearing, 6/7/23, at 120. At the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The parties' daughter is now an adult.

[2] Following a fight that occurred on the date of separation, Husband obtained a temporary Protection from Abuse (PFA) order against Wife on September 12, 2026, after she "repeatedly punch[ed Husband] in the neck." N.T. Master's Hearing, 6/7/23, at 135. On September 21, 2016, after a hearing, the trial court entered a three-year final PFA order against Wife as it relates to Husband. The PFA order evicted Wife from the marital residence, ordered
*(Footnote Continued Next Page)*

time of the master's hearing, Husband was employed with Talen Energy. **Id.** Husband has a high school degree, attended college "briefly," and served in the Navy for 10 years prior to marrying Wife. **Id.** at 145. During the marriage, Husband obtained his MBA with employer-assisted tuition. **Id.**

Wife testified at the master's hearing that she is disabled, unable to work, and that she is living with her mother because she is no longer receiving alimony pendente lite (APL). **Id.** at 31-32. **See also id.** at 33 (Wife testifying she is on multiple medications to control her advanced COPD, chronic mental illness, and heart problem); **id.** at 46-47 (Wife testifying that, from 2017 through 2019, she had no earnings, was unemployed, and would never be able to return to work because of her disabilities); **id.** at 49 (Wife testifying her mother "pays her bills . . . pays everything and my friends they pay the storage and my phone"). Wife testified that since the court terminated her APL her "life [has] crashed" economically. **Id.** at 78. Wife also testified that she had incurred attorneys' fees of approximately $30,000.00 as of the time of the master's hearing. **Id.** at 79-80.

The parties jointly owned the following property: the marital residence at 124 Locust Drive in Milford appraised at $236,607.00; a Disney timeshare;

---

her not to "abuse, stalk, harass, threaten[,] or attempt to use physical force that would reasonably be expected to cause bodily injury to [Husband, and generally] prohibited [Wife] from having **ANY CONTACT** with [Husband] directly or indirectly." **Id.**, Defendant's Exhibit "P," Final PFA Order, 9/21/16, at 3-4 (emphasis and capitalization in original). At trial, the parties' daughter and Husband testified that Wife had physically threatened and abused Husband during the marriage. **See** N.T. Master's Hearing, 6/7/23, at 134-79, 188. On rebuttal examination, Wife denied the claims of abuse. **Id.** at 209.

a Fidelity IRA[3] valued at $225,227.96; and an employer 401K plan valued at $29,931.21. *Id.* at 120-24. Husband testified that he had two Capital One credit cards and that he had satisfied any outstanding balances post-separation. *Id.* at 132-33. Each party owned a vehicle. Wife testified that she had credit card debt and was paying off the debit with her APL payments until her APL was terminated. *Id.* at 75-77. Finally, Husband testified that Wife's jewelry was appraised in 2017 at $67,825.00. *Id.* at 129.

On September 22, 2016, Wife filed a divorce complaint against Husband seeking equitable distribution of the parties' property rights and interests, APL, support/alimony, and attorney's fees and costs. Husband filed an answer and new matter. In May 2017, the court ordered Husband pay Wife APL in the amount of $3,858.25/month, retroactive to September 20, 2016, which included $350.00 in arrears. The APL award was based on Wife having no income and Husband having a monthly income of $9,172.00. *See* Order, 5/8/17.

A master's hearing was held on July 10, 2019. On August 26, 2019, Husband filed a motion to terminate Wife's APL, alleging that "it is equitable to terminate the award of APL since [Husband] has been paying [Wife] A[PL] for a period [of] nearly three years as of the date of this filing." Motion to Terminate APL, 8/26/19, at 2. Wife filed an answer to the motion claiming

_____

[3] Husband also has a different IRA not subject to distribution. *See* Master's Report and Recommendation, 2/29/24, at 7.

that is it inequitable to terminate her APL because she "is unable to work, and has been unable to work for a prolonged period of time [as she] suffers from numerous illnesses and handicaps [that] prevent her from [working]."[4] Answer and New Matter to Motion to Terminate APL, 9/17/19, at 2. On March 10, 2020, the court entered an order granting Husband's motion to terminate Wife's APL.

On November 10, 2020, the divorce master recommended that the case be remanded for further proceedings because "the record related to the matter no longer exists due to a computer issue associated with the recording equipment [and e]fforts to retrieve the record were unsuccessful." Report and Recommendation, 11/10/20, at 1-2. On May 10, 2021, Wife filed a motion to compel, arguing that due to the delay in preparing the master's report and recommendation, the parties' marital property should be valued as of the date of separation, not the customary date of distribution. *See* Motion to Compel, 5/10/21, at 3.

On April 20, 2022, the trial court entered an order directing the divorce master to "make an appropriate determination of the parties' date of separation from the hearing record . . . and to utilize the previous [m]aster's [h]earing date of July 19, 2019[,] as the date of valuation of marital assets for purposes of determining equitable distribution in the above matter."

---

[4] The master found that Wife suffers from COPD, chronic pain, and mental illness and requires oxygen and multiple medications. *See* Master's Report and Recommendation, Findings of Fact, at 2 (unpaginated).

Order, 4/20/22. On June 7, 2023, the master held a second hearing, at which Wife's lifelong friends, Deborah Baldwin and Edward Galley, Wife, Husband, and the parties' daughter testified.

On February 29, 2024, the divorce master filed her final report and recommendation. The master concluded in her report that: Husband has greater earnings[5] and a greater earning capacity than Wife; Wife's physical and mental disabilities prevent her from working full time or beginning a career; Wife supported her inability to work by providing medical documentation; Wife has not been employed in more than 10 years; Husband has retirement assets; and Wife has no retirement assets or the opportunity to grow assets. *See* Master's Report and Recommendation, 2/29/24, at 5-6. The master acknowledged that she found it difficult to establish what personal items had been taken from the home (which included Wife's jewelry), who had taken them from the residence, and the value of those items. *Id.* at 8.

Ultimately, the master concluded that "the scale tips in Wife's favor," awarded Wife 55% of Husband's Fidelity IRA and 401K plan, awarded Husband the marital residence, but ordered him to pay Wife $12,444.00 (representing 60% of the equity in the residence), permitted Husband to retain any personal items remaining in the residence, awarded Husband his non-marital IRA and PPL stock, and directed the parties to sell the Disney timeshare and divide the proceeds of the sale equally. *Id.* at 12-13. Finally, Husband was ordered to

_____

[5] The master found that Husband earns over $145,000.00 annually and Wife's income "is essentially zero." *Id.* at 11.

- 5 -

make 36 payments of $550.00/month in alimony to Wife and Wife was awarded the escrowed tax refund monies. *Id.* at 13.

On March 11, 2024, Wife filed exceptions to the master's report. Husband filed untimely exceptions eighteen days later, on March 29, 2024. On July 1, 2024, the trial court heard arguments on Wife's exceptions and, on July 24, 2024, denied the exceptions and affirmed the master's report and recommendation. Wife prematurely filed a notice of appeal on August 15, 2024, before the final divorce decree had been entered by the trial court. Wife moved to withdraw the appeal and the appeal was discontinued by order. *See* Order in 2573 EDA 2024, 9/12/24. On February 28, 2025, the trial court granted Wife's motion for entry of an amended final divorce decree. The final amended decree "approves, incorporates[,] and adopts the terms, provisions[,] and conditions of the Report and Recommendation of the Divorce Master, dated February 29, 2024, as a Final Decree of all outstanding economic claims raised by the parties including [] all claims of equitable distribution." Amended Final Divorce Decree, 2/28/25, at 1-2.

Wife filed a timely notice of appeal from the amended final decree and a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Wife raises the following issues for our review:

(1)     Whether the trial court erred and abused its discretion in terminating the award of APL to [Wife] prior to the conclusion of the litigation?[6]

(2)     Whether the trial court erred and abused its discretion in awarding alimony in the amount of $550.00 per month for a period of three (3) years when [Wife] was disabled and unable to work?

(3)     Whether the trial court erred and abused its discretion in denying [Wife's] motion to compel and directing the divorce master to use the initial master's hearing date of July 19, 2019[,] as the date of valuation of marital assets for the determination of equitable distribution as opposed to the hearing date of June 7, 2023?

(4)     Whether the trial court erred and abused its discretion by disallowing, at the master's hearing, evidence of the value of marital assets as of the date of distribution?[7]

(5)     Whether the trial court erred and abused its discretion by failing to award the value of [Wife's] jewelry to her in the form of a cash distribution?

(6)     Whether the trial court erred and abused its discretion in awarding [Wife] fifty-five (55%) percent of [Husband's] marital retirement accounts since, based upon the facts of the case, she was entitled to a larger distribution?

(7)     Whether the trial court erred and abused its discretion by failing to award attorney's fees to [Wife]?

Appellant's Brief, at 6-7.

Initially, we observe that in the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may

---

[6] **See Calibeo v. Calibeo**, 663 A.2d 184 (Pa. Super. 1995) (order for either spousal support or APL is interlocutory and not appealable until all economic claims have been resolved).

[7] The master acknowledged that "at the direction of the trial court" she and the parties were "limited to using the values [of property] as of the date of the original [hearing] in 2019." **Id.** at 6 n.1.

require. ***Mercatell v. Mercatell***, [] 854 A.2d 609, 611 (Pa. Super. 2004). Our scope of review in equitable distribution matters is limited. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion. ***Smith v. Smith***, [] 749 A.2d 921, 924 (Pa. Super. 2000).

***Cook v. Cook***, 186 A.3d 1015, 1019 (Pa. Super. 2018) (internal quotation marks omitted).

Wife first contends that the trial court erred when it terminated her APL prior to the conclusion of the parties' divorce action.

We review APL awards under an abuse of discretion standard. ***Haentjens v. Haentjens***, [] 860 A.2d 1056, 1062 (Pa. Super. 2004). APL is an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding. [***See***] 23 Pa.C.S.A. § 3103. APL is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse. ***Litmans v. Litmans***, [] 673 A.2d 382, 389 ([Pa.] 1996). Also, and perhaps more importantly, APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. ***Id.*** at 388. APL is[,] thus[,] not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation. ***DeMasi v. DeMasi***, [] 597 A.2d 101, 104-[]05 (Pa. Super. 1991). Alimony, in contrast, is terminated upon remarriage or cohabitation. ***Id.*** []; ***see also*** 23 Pa.C.S.A. § 3706. Since, however, the purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding, it does not come with the "sanction" of [s]ection 3706. ***DeMasi***, [597 A.2d] at 104-[]05. APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse. ***Haentjens***, [860 A.2d] at 1062; ***see also DeMasi***, [597 A.2d] at 105.

***Carney v. Carney***, 167 A.3d 127, 134-35 (Pa. Super. 2017) (internal quotation marks omitted). Moreover,

[i]n ruling on a claim for [APL], the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties. An award of [APL] may be modified or vacated by a change in circumstances.[] It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justifies a modification.

**Busse v. Busse**, 921 A.2d 1248, 1255 (Pa. Super. 2007), citing **Litmans v. Litmans**, 673 A.2d 382, 388-89 (Pa. Super. 1996) (internal quotation marks omitted).

By statute, a court may order a party receive APL, counsel fees, and expenses in a divorce proceeding as follows:

### § 3702. Alimony pendente lite, counsel fees and expenses

(a) **General rule.**--In proper cases, upon petition, the court may allow a spouse reasonable [APL], spousal support[,] and reasonable counsel fees and expenses. Reasonable counsel fees and expenses may be allowed pendente lite, and the court shall also have authority to direct that adequate health and hospitalization insurance coverage be maintained for the dependent spouse pendente lite.

23 Pa.C.S.A. § 3702(a). Because APL is not dependent upon the status of the parties, but upon the state of the litigation, typically "APL terminates at the time of divorce[,] which usually concludes the litigation." **See Prol v. Prol**, 840 A.2d 333, 335 (Pa. Super. 2003).

In the instant matter, Husband filed a motion to terminate Wife's APL, claiming that "it is equitable to terminate the award of APL since [Husband] has been paying [Wife] A[PL] for a period nearly three years as of the date of this filing." Motion to Terminate APL, 8/26/19, at 2. In its opinion, the trial

- 9 -

court supported its decision to terminate Wife's APL on March 10, 2020, prior

to the conclusion of the divorce litigation, as follows:

> During the 3½ years, [Wife] received approximately $162,046[.00] in APL. Given the modest marital estate of the parties and the accumulated APL payments appearing to sufficiently enable [Wife] to litigate the divorce proceedings on a similar level as [Husband], the [c]ourt determined that the APL award should be terminated. In addition, the termination [o]rder was entered after conclusion of the initial [d]ivorce [m]aster's hearing[,] which unfortunately had to be reheard due to a computer recording error. Based on the above considerations, we respectfully submit that this [c]ourt did not err or abuse its discretion in ordering the termination of the APL after 3[]½ years of payments.

Trial Court Opinion, 5/21/25, at 6.

In *DeMasi*, our Court reviewed consolidated appeals filed by husband

who had been found in contempt for failing to pay wife APL and also had been

denied the right to terminate Wife's APL *nunc pro tunc* after she remarried.

*Id.* at 102, 105. On appeal, the Court noted that statutory APL, unlike

alimony, does not automatically terminate upon remarriage. *Id.* at 105.

However, the Court stated, "the termination of the litigation involving the

divorce decree and equitable distribution matters does result in termination of

the APL [o]rder." *Id.* Because there was nothing in the record to show when

the parties' final equitable distribution order was finally entered, the Court was

"handicapped" and, thus, was "unable to determine at what specific point APL

should have ended." *Id.* at 105-06. In coming to its legal conclusion of the

issues on appeal, the *DeMasi* panel noted that

> While APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, **if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process and any remand until a final [o]rder has been entered.**

*Id.* at 104 (emphasis added).

Two years later, in **Nemoto v. Nemoto**, 620 A.2d 1216 (Pa. Super. 1993), the wife-appellant, citing **DeMasi**, argued that Pennsylvania law entitled her to continue receiving APL until her appeal rights were completely exhausted. **Id.** at 1221. Stating that wife's position was "not a fully accurate characterization of the law," our Court opined:

> Unquestionably, the termination of litigation involving divorce and equitable distribution matters results in the cessation of an APL order. [**DeMasi**,] 597 A.2d at 105. This rule does not mean, however, that only the termination of the litigation may mark the end of APL. If, after careful review, the trial judge determines that the spouse who has been receiving APL has acquired assets or income which sufficiently equalizes the financial resources of the parties to pursue the action, APL may be discontinued. **See Spink v. Spink**, [] 619 A.2d 277, 279 ([Pa. Super.] 1992).

**Id.** at 1221. In that case, our Court ultimately concluded that because wife "now has adequate assets and income available to her through equitable distribution, alimony, and her own earning capacity so that she may litigate the case as she chooses[,]" the trial court's decision to terminate wife's APL after the entry of the final divorce decree should be upheld. **Id.** at 1221-22. **See Jeffery v. Jeffery**, 296 A.2d 873, 873-74 (Pa. Super 1972) (where husband petitioned to vacate wife's APL, our Court found trial court did not

manifestly abuse its discretion by reducing wife's APL based on husband's reduction of income).

Later, in **Schenk v. Schenk**, 880 A.2d 633 (Pa. Super. 2005), our Court was asked to review whether the trial court erred in ordering wife's APL terminate after husband had paid APL for eight months where wife had vacated the parties' mobile home, was pregnant with her new boyfriend's child, and had moved in with her new boyfriend who financially supported her. **Id.** at 637. In affirming the trial court, we concluded that the trial court properly terminated wife's APL prior to the entry of the parties' final divorce decree because wife provided no evidence that she was unable "to maintain or defend the divorce action as to any attorney's fees incurred as a result of the divorce action." **Id.** at 645. While the hearing officer in the matter recognized that "neither adultery nor cohabitation is a defense to a petition for APL," **id.**, our Court observed that the focus of APL is "on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and **the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse**." **Id.** at 644-45 (emphasis added); **see also DeMasi**, **supra** at 105.

As these cases demonstrate, the award of APL is based on the dependent party's financial need, which necessitates a determination as to whether that spouse has acquired assets or income "which sufficiently equalizes [the parties'] financial resources [] to pursue the action." **Nemoto**, **supra** at 1221. Here, Wife averred that she "is unable to work [] and has

been unable to work for a prolonged period of time[,] suffers from numerous illnesses and handicaps [that] prevent her from [working, and notes that she submitted a] doctor's verification on two (2) occasions to the Domestic Relations Officer who made the decision concerning [her APL] award[.]" Wife's New Matter, 9/17/19, at 2 (unpaginated). Although Husband moved to terminate APL, and the court's order states that the motion was decided "after a hearing held on [Husband's] motion," there are no notes of testimony from that hearing in the record. *See also* Appellee's Brief, at 10 (Husband stating "[f]ollowing a hearing held thereon, where Appellant failed to appear and offer testimony, on March 10, 2020, the [t]rial [c]ourt terminated the [APL] obligation"). Moreover, Wife states in her reply brief that, in fact, no hearing was held, but just argument on the motion. *See* Appellant's Reply Brief, at 1.[8] *See also id.* at 2 (Wife stating that because no hearing was held on Husband's motion to terminate APL, she, as appellant, was incapable of providing, for purposes of appeal, notes of testimony from a non-existent hearing).

_____

[8] We reiterate that it is the burden of the moving party, here Husband, to prove that an award of APL should be modified or terminated. *See Litmans*, *supra*. Thus, Husband's statement that the "[e]vidence presented [at the hearing] established that [Wife] was paid over $160,000.00 in APL," Appellee's Brief, at 10, begs the question about whether competent evidence showed that, without APL, Wife was on equal footing, financially, to pursue the divorce proceedings based on her economic resources. *DeMasi*, *supra*.

Without any evidence in the record to determine Wife's financial resources and needs in relation to husband's income or change in circumstances, together with "the character, situation[,] and surroundings of the parties," **Busse**, **supra**, we conclude that the trial court abused its discretion by terminating Wife's APL nearly five years before the entry of the final divorce decree. **Cf. Spink v. Spink**, 619 A.2d 277, 280 (Pa. Super. 1992) (termination of APL affirmed on appeal where record supported trial court's conclusion wife had not demonstrated further need for APL payments and where terms of trial court's prior order that APL would terminate upon sale of marital residence and payments to wife for at least one year had been met). Even though the trial court recognized the "modest marital estate of the parties," there is no evidence in the record to support the conclusion that Wife had enough assets to pursue the almost five years of litigation costs leading up to the entry of the final divorce decree and any costs to pursue this appeal. **See Litmans**, **supra** at 390 (where trial court denied wife's petition to modify APL based on husband's increased income and fact children had severed ties with wife, and where husband no longer provided wife a car, our Court reversed decision, noting testimony at trial clearly showed wife did "not maintain[] a lifestyle approximating that of the parties during the marriage [and that she] demonstrated significant changes in circumstances since the entry of the original [APL] award]"); **cf. Brody v. Brody**, 758 A.2d 1274, 1281-82 (Pa. Super. 2000) (wife's APL properly terminated as of date of court's order sustaining in part and dismissing in part husband's exceptions to

master's report and recommendation where court found wife: had "generous" financial support from parents, was capable or working, was receiving all liquid or semi-liquid assets in marriage, and was entitled to receive additional redemption funds from her 45% ownership in company; thus, wife "ha[d] acquired enough assets to pursue litigation on equal terms with [h]usband"); *Mackie v. Mackie*, 222 A.3d 798 (Pa. Super. filed Oct. 2, 2019) (Table)[9] (wife properly awarded $2,509.00 per month in APL during pendency of appeal where there were "very few assets to be equitably divided in the parties' divorce proceeding[,]" only liquid cash distribution to wife was $2,299.35, remaining assets were husband's two businesses, no retirement assets remained in pay status, wife not eligible to remain on husband's health plan after divorce decree entered, and husband's income substantially greater than wife's).

Thus, we reverse and remand for an evidentiary hearing on Husband's petition to terminate Wife's APL, at which time the parties shall be permitted to submit evidence to determine whether Wife was entitled to receive APL throughout the duration of the litigation and throughout the "appeal process

_____

[9] *See* Pa.R.A.P. 126(b)(2) (non-precedential decisions of Superior Court filed after May 1, 2019 may be cited for persuasive value).

and any remand until a final [o]rder has been entered." ***DeMasi***, ***supra*** at 104.[10]

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2025

_____

[10] Because the court's APL determination on remand may affect the ultimate distribution scheme, as well as the amount of any post-divorce alimony, we will not address the remaining issues on appeal. ***See Butler v. Butler***, 663 A.2d 148, 150 at n.1 (Pa. 1995); ***Keller v. Keller***, 760 A.2d 22, 27 (Pa. Super. 2000).